224 So.2d 664

**T. T. CALVERT**

**v.**

**Noble FUNDERBURG.**

**6 Div. 327.**

Supreme Court of Alabama.

June 12, 1969.

Rehearing Denied July 10, 1969.

Rogers, Howard, Redden & Mills, Birmingham, for appellant.

Cooper, Mitch & Crawford, George C. Longshore, Birmingham, for appellee.

LAWSON, Justice.

At the time of submission, this case was assigned to the late Justice Goodwyn and, after his death, was reassigned to the writer on July 29, 1968.

We granted the petition of T. T. Calvert for a writ of certiorari to the Circuit Court of Jefferson County to review a judgment of that court rendered in a workmen's compensation case. § 297, Title 26, Code 1940.

Noble Funderburg filed a complaint in the Circuit Court of Jefferson County against Robert Martin, Martin Coal Company, T. T. Calvert (the petitioner), and Hubert Layne seeking workmen's compensation benefits. The complaint was subsequently amended.

The defendants Layne and Calvert answered. The defendants Robert Martin and Martin Coal Company did not file any responsive pleading and did not participate in the hearing held by the trial court.

Trial was had upon the amended complaint and the answers and a judgment was rendered against the defendants Calvert and Layne awarding compensation to the plaintiff, Noble Funderburg, the respondent in this court. Motions for new trial filed by Calvert and Layne were overruled. Thereafter, as we have shown, T. T. Calvert filed his petition in this court for writ of certiorari. Hubert Layne has not sought a review of the judgment of the trial court.

In petitioner's brief it is asserted that the judgment of the trial court should be reversed for the following reasons, among others: I. The determination of the trial court which was filed in writing with the clerk of the circuit court, as required by § 304, Title 26, Code 1940, contains no specific finding that Funderburg at the time of his injury was an employee of petitioner. II. The evidence as to the employer-employee relationship was not sufficient to support the judgment against petitioner. III. The judgment against petitioner is inconsistent with the trial court's findings of facts. IV. Petitioner did not have written notice of the accident as prescribed by § 294, Title 26, Code 1940, or actual knowledge of the accident of the type sufficient to dispense with the written notice.

We will treat the contentions of the petitioner in the order in which we have summarized them in preceding paragraph.

I.

Section 304, Title 26, *supra*, as here pertinent reads:

"* * * At the [time fixed for] the hearing or any adjournment thereof, the court shall hear such witnesses as may be presented by each party, and in a summary manner without a jury, unless one is demanded, to try the issue of wilful misconduct on the part of the employee, decide the controversy. This determination shall be filed in writing, with the clerk of said court, and judgment shall be entered thereon in the

same manner as in causes tried in the said circuit court, *and shall contain a statement of the law and facts and conclusions as determined by said judge.* * *. *"* (Emphasis supplied.)

Following the hearing, the trial court filed with the Clerk of the Circuit Court of Jefferson County a written instrument which bears the heading "Minute Entry," but to which we will sometimes hereinafter refer as the "determination." It contains two sections; the first bears the caption, "Findings of Facts," and the second, "Final Judgment."

In Ex parte Sloss-Sheffield Steel & Iron Co. (Greek's Case), 207 Ala. 219, 92 So. 458, 459, we said of the provisions of law just quoted, § 28, Act 1919, pp. 206–239, as follows: "The required statement of law, facts, and conclusions is necessary to make serviceable the review by certiorari which the statute provides * * *." And in Bryant v. Central Foundry Co., 217 Ala. 332, 116 So. 345, it was said of § 7578, Code 1923, a progenitor of § 304, Title 26:

"* * * The statute contemplates, not a recital of the evidence, with its conflicting lights and tendencies, but a determination by the trial judge of the facts established by the evidence, responsive to the issues presented, with the conclusion as to whether the facts found establish or fail to establish the liability asserted; *and there should be a finding of every fact necessary to sustain the judgment of the court.* * * *" (Emphasis supplied.)

■ When the trial court completely fails to comply with the provisions of § 304, Title 26, *supra,* the judgment of the trial court will be reversed by this court. Bass v. Cowikee Mills, 257 Ala. 280, 58 So. 2d 589; Richardson Lumber Co. v. Pounders, 254 Ala. 285, 48 So.2d 228. But a substantial compliance will suffice. Bryant v. Central Foundry Co., *supra*; Ex parte Sloss-Sheffield Steel & Iron Co., *supra.* And we have held that where the trial court's finding of fact is merely meager

and omissive, this court will look to the evidence in the case to see if on any reasonable view of the evidence the judgment of the court can be sustained. Ex parte Louisville & N. R. Co., 208 Ala. 216, 94 So. 289. See Bass v. Cowikee Mills, *supra,* citing as authority for its holding the case of Ex parte Shaw, 210 Ala. 185, 97 So. 694.

Petitioner's answer denied that the relationship of employer and employee existed between Funderburg and himself at the time of the occurrence of the accident set out in the complaint.

We agree with petitioner that the trial court in its "determination" did not expressly find or conclude that the relationship of employer and employee existed between petitioner and Funderburg at the time the latter was injured. We can find no unequivocal statement to that effect in either the "Findings of Facts" or "Final Judgment," the first paragraph of which contains some factual findings.

■ However, when all the language of the "determination" is considered and construed together, we are of the opinion that the absence therefrom of an express finding as to the relationship between petitioner and Funderburg at the time the latter was injured is but an omission of the kind which permits us to go to the evidence to see if on any reasonable view thereof the judgment of the trial court can be sustained. Ex parte Louisville & N. R. Co., 208 Ala. 216, 94 So. 289; Pinkney v. James B. Clow & Sons, Inc., 277 Ala. 648, 173 So.2d 811, and cases cited.

We hold, therefore, that the trial court did not fail to comply with the provisions of § 304, Title 26, *supra,* to such an extent that a reversal of its judgment is required.

II.

We come now to a consideration of petitioner's contention that the judgment should be reversed because the evidence as it bears on the employer-employee relation-

ship was not sufficient to support the judgment against petitioner.

Before summarizing the evidence as it relates to that question, we refer to two principles which are well established by the decisions of this court.

■ In this character of review, we do not deal with the weight of the evidence to sustain a finding of the trial court. We are simply concerned with the question as to whether there was any evidence to sustain the finding and if on any reasonable view thereof, there is support in the evidence of the finding, that finding and the judgment based thereon will not be disturbed. Riddle v. Smith, 252 Ala. 369, 41 So.2d 288, and cases cited.

We think that principle is applicable in a situation such as that with which we are presently confronted, where there was an omission in the trial court's "determination" as to the existence or non-existence of the employer-employee relationship and we have to go to the evidence to determine if the judgment of the trial court can be sustained.

■ It is also settled by our decisions that it is the reserved right of control rather than its exercise that furnishes the true test of whether the relationship between the parties is that of an independent contractor or of employer and employee. Weeks v. C. L. Dickert Lumber Co., 270 Ala. 713, 121 So.2d 894, and cases cited.

■ We set out hereafter a summary of the testimony which relates to the question as to whether or not Funderburg was an employee of petitioner, T. T. Calvert, at the time Funderburg was injured.

Funderburg, a colored man, was sixty-three years of age at the time of trial. On March 10, 1964, he sustained a personal injury caused by an accident arising out of and in the course of his employment as a coal miner in a small coal mine in Jefferson County.

The mine was under land owned by one Howard Moss, who had leased the land and apparently the minerals thereunder to C & H Coal Company, which company subleased to a partnership composed of T. T. Calvert and his brother, Kyle Calvert, who did business as Calvert Coal Company.

On September 11, 1963, T. T. Calvert and one Robert Martin signed a written instrument, which reads as follows:

"State of Alabama

County of Jefferson

"To All Concerned

"This is a lease with all provisions and agreements herein compiled between Robert Martin and Calvert Brothers Coal Company.

"1. This lease is for one year, to be renewed, by mutual consent of both parties.

"2. Whereas Calvert Brothers Coal Company agrees to lease mine known as C H and C Coal Company No. 3 to Robert Martin for purpose of mining and selling coal to Calvert Brothers exclusively. Rate to be paid at $5.00 per ton.

"3. Calvert Brothers agrees to buy such coal in amounts set by Calvert Brothers from time to time.

"4. Calvert Brothers agrees to furnish Robert Martin Cars, rails, spikes, mules, wiring, pumps, blocks, drills, fan, insulators, and lighting arrestor needed for operation of this mine.

"5. Robert Martin assumes responsibility for any loss or damage to equipment, taxes and other claims arising as a result of his operation.

"6. It is further understood and agreed that Robert Martin assumes all responsibility for claims or damages by any party employed by Robert Martin or as a result of this operation on or off of this job.

"7. Lessee agrees to vacate this mine without any claims against Calvert Brothers Coal Company if lessee decides to cease operation of this mine. It is also understood that he vacate the mine promptly.

"8. It is also agreed that lessee operate mines according to specifications set out by lessor.

"9. This lease is non-transferable."

Although the instrument just quoted refers to a mine "known as C H and C Coal Company No. 3," no such mine was in existence at the time that instrument was executed. The mine was "opened up" at a later date by Robert Martin, who apparently used the name Martin Coal Company.

The evidence does not show exactly when the mine was "opened up" but it was apparently in operation in June or July of 1963, when Funderburg was employed by Robert Martin to work in the mine as a coal miner.

The evidence tends to show that Calvert Brothers Coal Company furnished to Robert Martin personal property of the kind which the partnership had agreed to furnish in Section 4 of the instrument quoted above.

Robert Martin ceased to operate the mine during the last week in February, 1964, but the mine continued to function with the same personnel, including Funderburg. The personal property furnished by the Calverts to Martin apparently remained in the mine.

Hubert Layne came into the picture in the last week in February, 1964, when he had a conversation with Kyle Calvert. As a result of that conversation he became connected with the operation of the mine on March 2, 1964. Layne, who was called as a witness by the plaintiff below, testified that he never did lease the mine but "tried it out for a while." We quote from Layne's testimony: "Well, I was on a trade with the mines and I talked to Mr.

Calvert's brother and we was kind of working up a deal on it and I tried it for awhile—I put a man down there to run it and I kept it for awhile and they came out on a strike and I never did complete the deal." Layne was asked if he was going to lease the mine and replied, "I had it in mind at the time." Layne was asked, "* * didn't you go over and take over the mine?" He answered that question thusly: "No, I didn't take it over, I just tried it out." Later on during the examination of Layne he was asked the following question and gave the following answer:

"Q. And—it is not clear to me what your arrangement was with Mr. Calvert. You must have had some kind of arrangement or you wouldn't have put your employee over there."

"A. Well, I did have it in my mind there at that time to take it over, but I let it drop when they went on strike. I never did really lease it."

Layne sent Junior Walker to the mine on March 2, 1964, as a worker and as a supervisor or foreman over the other persons who worked in the mine. As we have heretofore indicated, the evidence tends to show that the miners who had worked under or for Martin continued to work in the mine after March 2, 1964. They went out on strike about thirty days later and, thereafter, Layne had no further connection with the mine in question.

During the time Layne was connected with the mine he paid the people who worked in the mine and he was paid by the Calvert partnership "so much" a ton for the coal delivered at the mouth of the mine.

On cross-examination Layne was asked the following questions and gave the following answers:

"Q. Did Mr. Calvert have anything to do with the operation of the mine?

"A. No, sir, they usually leased it out.

"Q. And he didn't hire the employees or fire them or tell them what to do?

"A. No, sir."

Kyle Calvert died prior to the trial and hence his version of Layne's connection with the mine was not before the trial court.

Funderburg testified on his own behalf and stated that at the time of his injury he was working for Layne and was paid by him. He further said, in substance, that he had seen T. T. Calvert in the mine in question, "* * * seeing to it that everything was going right and everything that was necessary in the mine was being used right and everything would be in place and see to it that the operation of the mine. * * *" Funderburg also stated that T. T. Calvert "would look at some of the things —the rails, the timbers and the things like that." He also stated that he had seen T. T. Calvert come to the mine "in the truck with the fellows" who would bring supplies to the mine.

We are not here concerned with the relationship of Martin and the Calverts under the instrument of September 11, 1963, or what the relationship would have been between Layne and the Calverts if they had executed an instrument similar to that of September 11, 1963, or the fact that the Calverts "usually leased it [the mine] out" as stated by Layne.

We are here concerned with the relationship between Layne and the Calverts at the time Funderburg was injured when, according to Layne, he was operating the mine without a lease, oral or written.

If Layne was an independent contractor, Funderburg was not an employee of the Calverts. On the other hand, if Layne performed his work upon the premises of the Calverts and with their tools and appliances and under their direction, or in a way where the system of employment used merely provided a method of fixing Layne's wages, then Layne was an employee within the meaning of § 310, Title 26, Code. If Layne was an employee he was not an independent contractor. If the circumstances were such as that the Calverts contemplated the necessity of Layne having helpers in his work, the employment of such helpers did not make them the helpers or servants solely of Layne, as contemplated by the Workmen's Compensation Law. It was not necessary for such helpers or employees to have had a claim for wages against the Calverts to enable them to come within the Workmen's Compensation Law. Their relation to such law depends upon the relation of Layne to the Calverts. If Layne was an employee of the Calverts and his employment contemplated the use of others, such as Funderburg, then the latter was also an employee of the Calverts within the meaning of the Workmen's Compensation Law. De-Bardeleben Coal Corp. v. Richards, 251 Ala. 324, 37 So.2d 121.

We are of the opinion that under the peculiar facts of this case, the principles set forth in the *DeBardeleben Case* are applicable. We construe the evidence to show that Layne was an employee of the Calverts, who contemplated that Layne would employ helpers, such as Funderburg. Consequently, Funderburg was an employee of the Calverts and therefore the judgment of the trial court is not subject to reversal on the ground that the evidence was not sufficient to show that Funderburg was an employee of the Calverts at the time he sustained his injury.

### III.

We cannot agree with petitioner's insistence that the judgment here under review should be reversed because it is contrary to the trial court's finding of fact.

Petitioner argues that the language which we will hereafter quote from the trial court's "Findings of Facts" is tantamount to a finding that the employer-employee relationship did not exist between petitioner and Funderburg and, hence, the judgment in favor of Funderburg is incon-

sistent with the finding. We quote from petitioner's brief:

"* * * As we have previously pointed out in this brief, the finding of fact makes the assertion that there is 'no direct and positive evidence in the case that * * * Calvert * * * retained * * * any power to control the hiring or firing of employees in the mine or * * * any power to direct or control how the mine operations were carried on.' We submit that the retention of the right to control is a subject which only admits of proof by direct or positive evidence. * * *"

The quotation from the "Findings of Facts" in petitioner's brief is not altogether accurate and is incomplete. The words "were carried on" are not followed by a period, but by a comma and by the words, "except as may be hereafter pointed out."

We do not think that there must be statements from witnesses to the effect that the defendant retained the right to control the operations or work of the claimant in order to justify a finding that the employer-employee relationship existed. Facts and circumstances which bear on the relationship of the parties which tend to show the employer-employee relationship are sufficient, in our opinion.

We conclude that the judgment of the trial court is not subject to reversal on the ground that the judgment is contrary to the trial court's finding of fact. Our holding in Weeks v. C. L. Dickert Lumber Co., 270 Ala. 713, 121 So.2d 894, is not supportive of petitioner's contention presently under consideration.

## IV.

We will next consider petitioner's insistence that the judgment should be reversed because he was not given the written notice of Funderburg's accident and injury as provided by § 294, Title 26, Code 1940, nor did he have actual knowledge of the accident and injury within the time prescribed

by the statute sufficient to dispense with the statutory notice.

Section 294, *supra,* reads:

"Every injured employee or his representative shall, within five days after the occurrence of an accident give or cause to be given to the employer written notice of the accident, and the employee, if he fails to give such notice, shall not be entitled to physician's or medical fees, nor any compensation which may have accrued under the terms of articles 1 and 2 of this chapter, unless it can be shown that the party required to give such notice had been prevented from doing so by reason of physical or mental incapacity, other than minority, or fraud or deceit, or equal good reason, but no compensation shall be payable unless such written notice is given within ninety days after the occurrence of the accident, or where death results, within ninety days after the death."

There is no evidence in the record tending to show that the statutory written notice was given by Funderburg to the petitioner, Calvert. In fact, Funderburg's complaint, as amended, did not allege that written notice was given. In regard to notice, the amended complaint alleged:

"And the plaintiff further avers that the defendants all had actual knowledge of the accident made the basis of this suit and resulting injury to the plaintiff within the time required by law."

In the trial court's "Findings of Facts" appears the following:

"It appears to be clear that the man in charge of the mine, the foreman, had actual knowledge, promptly, of the occurrence of the accident and of the injury of this Plaintiff and accordingly, no question of written notice arises in the case."

The trial court made no other reference to the matter of notice.

It has been the rule since the decision of this court in Ex parte Stith Coal Co., 213 Ala. 399, 104 So. 756, that the written notice required by the statute is not necessary where the employer has actual knowledge of the accidental injury within the time written notice is provided for in the statute.

We will not undertake to review our many cases which deal with the question of "actual knowledge," inasmuch as we have said that what constitutes "actual knowledge" is scarcely capable of more accurate definition than the words import, and that each case where that question is involved must be determined on its own facts. C. E. Adams & Co. v. Harrell, 257 Ala. 25, 57 So.2d 83.

Appellee in brief filed here seems to interpret that part of the trial court's "Findings of Facts" last quoted above as constituting a finding that Hubert Layne had actual knowledge of the accident and refers us to page 64 of the transcript of the record as containing testimony showing such actual knowledge of the accident by Layne. The only language on page 64 of the transcript of the record which has any reference to Layne's knowledge of the accident was adduced during the direct examination of Layne, who was Funderburg's witness, and reads as follows:

"Q. Did Junior Walker relate to you the facts about Noble Funderburg's accident?

"A. You mean, did he come and tell me?

"Q. Yes.

"A. Yes, sir, he told me that they carried him to the hospital and he had an accident."

Conceding without deciding that Hubert Layne was, in effect, petitioner's alter ego, and that a mere verbal notice to Layne by Walker, who did have actual knowledge of the accident and injury at the time of its occurrence, would be binding on petitioner if timely made, the fact remains that the testimony last above quoted utterly fails to show that the conversation which Walker had with Layne was within the period of time prescribed by § 294, Title 26, *supra,* for the giving of notice.

We entertain the view that the trial court had reference to Walker rather than Layne when he observed that the "man in charge of the mine, the foreman, had actual knowledge, promptly, of the occurrence of the accident and of the injury. * * *" But we entertain the view that Walker was not Calvert's agent for the purpose of receiving notice. The evidence fails to show any direct relationship between Calvert and Walker. There is nothing in the evidence to indicate that Calvert even knew of Walker's existence or knew of his presence in the mine.

True, the evidence shows that Walker was sent to the mine by Layne to supervise the persons working in the mine and to perform certain other duties and it further shows that Funderburg looked upon Walker as his foreman and boss, the man who stayed at the mine and told him "what to do and where to go," etc. But such testimony, in our opinion, is not sufficient to connect Walker with Calvert so as to impute to Calvert the knowledge which Walker had of Funderburg's accident and injury.

It is our view that there is no legal evidence in this case to support the finding of the trial court to the effect that petitioner, Calvert, had "actual knowledge" of Funderburg's accident and injury within the time prescribed by § 294, Title 26, *supra.*

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.