295 So.2d 419

## DEFENSE ORDINANCE CORPORATION, a corporation

v.

## William P. ENGLAND.

### Civ. 306.

Court of Civil Appeals of Alabama.

May 1, 1974.

See also, Ala.Civ.App., 52 Ala.App. 558, 295 So.2d 413.

Simmons, Torbert & Cardwell, Gadsden, for appellant.

**568**

Robert H. King, Gadsden, for appellee.

HOLMES, Judge.

Review is had in this matter by writ of certiorari from the Circuit Court of Etowah County, Alabama. Suit was filed by appellee-England, the employee, against appellant-Defense Ordinance Corporation, the employer, under the Alabama Workmen's Compensation Law, Ala.Code, Tit. 26, § 253 et seq. (1940). The trial court entered a finding for employee of temporary total and permanent partial disability and made awards accordingly. Thereafter, the employer filed a motion for a new trial which was denied by the trial court.

Both parties stipulated that the appellee was an employee of the appellant at the time of his injury and that both appellant and appellee were bound by the Workmen's Compensation Law of Alabama when the injury occurred. The parties also stipulated that the appellant received notice of appellee's injury and sent him to a doctor for treatment.

Tendencies of the evidence reveal the following:

Appellee was employed by appellant as a millwright performing maintenance, rebuilding, and repairing machines. Appellee has a high school education and worked at a parts and machine company upon graduation. He testified this is the only type work he has done for 16 years.

On July 23, 1971, appellee was removing an electric motor from a machine when it slipped jerking him forward. Appellee testified that he had "a real bad hurting in my back and down my right leg and it made me real sick in the stomach when it

happened." The employer sent appellee to Dr. Ted Cross who later referred him to Dr. Philip Williams, an orthopedic surgeon. Dr. Williams testified that appellee had evidence of acute severe pain along the course supplied by the sciatic nerve involving the right leg. The doctor diagnosed and a myelogram showed appellee to have a ruptured lumbar disc at the interspace between the fourth and fifth lumbar vertebra on the right side of the spine. Dr. Williams stated he performed surgery on appellee consisting of a lumbar laminectomy and removal of ruptured disc material.

The doctor testified appellee became ambulatory after surgery without difficulty and he was discharged from the hospital some seven days after surgery. Three weeks after the discharge, the doctor saw appellee again and felt he was doing well and showed no apparent evidence of pain in his back or leg. Appellee came back to the doctor approximately two weeks later complaining of pain in the area of the lower end of the incision and pain in his hips. The doctor interpreted this as scar tissue pain. Appellee returned approximately a month and a half later and reported soreness but the doctor evaluated him as doing well. The doctor last saw appellee on December 10, 1971, and evaluated him as being ambulatory without difficulty. He testified that appellee, on his last visit, complained of a little soreness in his low back.

The doctor released him to return to his job as of December 11, 1971, and discharged him from further follow-up care.

The doctor testified that as of the time he released appellee, he had a permanent impairment of function of his low back amounting to five percent based on the body as a whole. In response to a hypothetical situation regarding appellee's ability to lift weights, the doctor testified that, in general, patients who have undergone the same surgical treatment as appellee sustain some limitation of function of the lower back; that they may lose a certain amount of terminal motion and experience inability to tolerate extremes of stress by the low back.

Appellee testified as follows regarding his injury after the operation: The scar on his back is approximately 6 inches long (the judge observed appellee's back); he couldn't perform any of his former work as a millwright; he went back to work as a supervisor and worked odd hours depending upon how he felt; he feels bad and has to walk a lot because his back is stiff; it pains him to walk and he cannot walk as fast; he can't bend over or lift or carry weight and objects like he used to; his back hurts him "all the time"; he has a dead spot in the center of his back; his right leg hurts; he is only able to sleep for 2 or 3 hours at a time and then must get up and walk because his back hurts; this occurs every night; at times his right leg goes numb and he has no feeling in it; he is nervous and his hands shake all the time; he takes Darvon, Anacin and Excedrin for pain.

Appellee testified he has applied for jobs but cannot get one because of his injury.

John Newman, former manager of the Alabama State Employment Service in Gadsden, testified he had worked 39 years with the Alabama State Employment Service and had recently retired. He testified that his duties had been to take applications from people wanting work and to try and find them jobs based upon their prior experience, education, and physical ability. Newman stated he had been in the Gadsden area since 1945 and was familiar with the work and physical requirements of various industries in the area. Newman recalled an interview he had with appellee concerning his work history, injury, and application for a job while he was manager of the employment service. He stated that he has made feasibility studies of employment of people with a disability and

has continuously attended various seminars on the subject. Newman testified that, in his judgment, appellee had an employability limitation of eighty-five to ninety percent.

Dr. John Seymore, a Ph.D., whose graduate specialties are in the field of counseling and guidance, was called to testify on behalf of appellant. He testified his experience has enabled him to be familiar with requirements of jobs of various industries and employers throughout Alabama, and that he has done numerous vocational surveys in Alabama and Mississippi which have enabled him to ascertain these requirements. Upon being asked by appellant's attorney a hypothetical question for his judgment as to whether there would be any type of employment on the Alabama labor market available to appellee considering his education, training, and a five percent partial impairment to the body as a whole, Dr. Seymore testified that, in his judgment, a wide range and variety of jobs would be available. On cross-examination, based upon a hypothetical by appellee's attorney involving the injuries and pain of which appellee testified, Dr. Seymore testified available jobs would be very limited.

The trial court ordered appellee examined by Dr. William Warren, a neurosurgeon, who testified he examined appellee and found him to have normal curve of his lumbar spine and no spasm of muscles along his spine which normally is present in those people with back trouble. The doctor testified appellee had sensory changes, decrease in pain, touch and vibratory sense all over the right extremities, upper and lower, and also his trunk, but his position sense and stereognosis were intact. Dr. Warren stated he thought appellee had a good recovery from the back operation, and that he couldn't see any neurological reason why he couldn't go about his business. He also stated he didn't believe the alleged nervousness of appellee came as a result of the back injury. On cross, in answer to appellee's question whether appellee has any disability at all as a result of his injuries, Dr. Warren said he probably had a disability, but that it was psychological rather than neurological.

The trial court made a finding for the plaintiff-appellee of temporary total disability for a period of 64 weeks at different times from the date of his injury, July 23, 1971, to May 10, 1973. The court further found that plaintiff-appellee has a thirty-five percent permanent partial disability to his body as a whole to such an extent that his ability to earn a livelihood is impaired thirty-five percent or that his disability will continue to exist for a period exceeding the statutory period for which workmen's compensation is payable. The lower court further found that plaintiff-appellee had a wife and two children dependent upon him and that his average weekly earnings were $200 per week or that such finding is at least fair to the employer.

In accord with the above findings, the trial court awarded plaintiff-appellee temporary total disability for 64 weeks at the rate of $50 per week; permanent partial disability for 41 weeks at $45.50 per week; and for future disability permanent partial benefits of $45.50 per week for 195 weeks.

■ At the outset, this court would like to call to the attention of the parties, for use as they deem appropriate, the legislative intent of our workmen's compensation law. The policy of the statute is to conduct the proceedings in the shortest order consistent with the due administration of justice. Wetter Pipe Co. v. Williams, 223 Ala. 220, 135 So. 172; Semmes Nurseries, Inc. v. McVay, 279 Ala. 42, 181 So. 2d 331. See 19A Ala.Dig., Workmen's Compensation, ☞46. We further observe that liberal construction of the workmen's compensation law has been favored to effectuate its purposes and eliminate procedural technicalities. See 19A Ala.Dig., Workmen's Compensation, ☞51, and cases cited therein.

Appellant, by assignments of error 43 and 44, urges the lower court erred to reversal in that it failed to make a finding

of law and fact as required by Ala.Code, Tit. 26, § 304 (1940).

The rule is well established that where the trial court completely fails to comply with the above cited provisions, the judgment of the trial court must be reversed. Bass v. Cowikee Mills, 257 Ala. 280, 58 So.2d 589; Richardson Lumber Co. v. Pounders, 254 Ala. 285, 48 So.2d 228. However, it has been held that a substantial compliance will suffice. Calvert v. Funderburg, 284 Ala. 311, 224 So.2d 664; Alabama Textile Products Corp. v. Grantham, 263 Ala. 179, 82 So.2d 204. Additionally, we also note that where the finding of fact in a compensation case is meager or omissive, as we find in the instant case, the reviewing court will look to the evidence in the case to see if on any reasonable view of the evidence, the judgment of the court can be sustained. Calvert v. Funderburg, *supra*; Birson v. Decatur Transfer and Storage, Inc., 271 Ala. 240, 122 So.2d 917; Bass v. Cowikee Mills, *supra*; Ex parte Louisville & Nashville Railroad Co., 208 Ala. 216, 94 So. 289. We therefore find no merit in the above aspect of assignments of error 43 and 44 as the findings in this instance are meager and omissive.

We must follow the rule that on certiorari to review workmen's compensation cases, we will not review the weight or preponderance of the evidence, but will look to see if there is evidence to support the facts found by the trial court. Pinto Island Metals Co., Inc. v. Edwards, 275 Ala. 351, 155 So.2d 304. When there is legal evidence, or reasonable inference therefrom, to support the facts found by the trial court, such findings are conclusive and will not be disturbed on appeal. Kroger Co. v. Millsap, 280 Ala. 531, 196 So.2d 380; Dale Motels, Inc. v. Crittenden, 50 Ala.App. 251, 278 So.2d 370; Aluminum Workers International v. Champion, 45 Ala.App. 570, 233 So.2d 511.

Accordingly, appellant's assignments or error 4, 5, 11, and 43 urging us to change our method or review in workmen's compensation cases and contesting the percentage figure are not well taken. We also point out that the determination of a percentage of permanent partial disability is for the trial court, which reaches its conclusion from all the evidential facts and circumstances. See Semmes Nurseries, Inc. v. McVay, *supra*. We cannot say that there was insufficient evidence in the instant case for the trial court's finding of thirty-five percent permanent partial disability.

Appellant's assignments of error 1, 2, 3, and 43 assert error in the trial court's finding that appellee was temporarily and totally disabled for a period of 64 weeks at different times from the date of his injury on July 23, 1971, to May 10, 1973, when testimony ended in the case. Appellant argues there is no evidence to support such finding and that such finding is contrary to law in that there is no provision for finding temporary total disability "at different times" off and on.

Upon careful review of the evidence of the case to determine if the lower court's judgment is supported, we cannot ascertain the amount of time for which the appellee was temporarily and totally disabled. It would appear to us that the lower court took the amount of time from the date of the injury to the end of the trial and subtracted from it the approximate amount of time during which appellee was employed. For the period during which appellee was not employed, it appears the lower court assigned temporary total disability. To the periods of employment, it appears he assigned permanent partial disability. Since the period of temporary total disability cannot be ascertained, we must reverse and remand; however, we feel some comment by us is appropriate upon this aspect.

Temporary total disability is ordinarily established by direct evidence of actual wage loss. "In the usual industry situation, there is a period of healing and

complete wage loss, during which temporary total is payable. This is followed by a recovery, or stabilization of the condition. . . ." Vol. 2 Larson, Workmen's Compensation Law, § 57.10. The same section also states that the current tendency is to abandon the terminology of "temporary total" and refer to it instead as the "healing period" or the "period of recovery." These terms are descriptive and definitional as to what period temporary total disability applies. A perusal of cases cited in the above quoted section are quite informative. In Kirkland v. Benedict & Jordan, 120 So.2d 169 (Florida 1960), the court stated that temporary total disability applies to the healing period during which the claimant is recovering and unable to work. The court further stated that the healing period does not continue after the claimant has reached his maximum improvement from the injuries. A search of 41 Words and Phrases "Temporary Total Disability" and "Temporary Total Disability Period" as in accord with Larson, *supra*. Temporary total disability refers to the period of time the employee is recuperating. This is distinguished from permanent partial which is based on the medical condition *after* maximum improvement has been reached. See Larson, *supra*, § 57.10.

 We will comment that temporary total disability may occur at different times during the recuperative period of healing until maximum medical improvement is reached or can be ascertained depending upon the circumstances of each case. See Richter v. Shoppe Plumbing & Heating Co., 257 Minn. 108, 100 N.W.2d 96; Costa v. Cars, Inc., 96 R.I. 396, 192 A.2d 1. However, we particularly note that the fact a person is unemployed does not necessarily in and of itself mean he is temporarily totally disabled.

Although our above stated finding requires us to reverse and remand the case, we deem it necessary to comment upon other assignments of error argued by appellant.

Appellant urges there is no evidence to support the trial court's determination that appellee's average wages were $200 per week when he was injured. Additionally, appellant asserts the finding is contrary to Ala.Code, Tit. 26, § 279(G) (1940). We do not agree. Appellee testified he had been working for appellant approximately six months. Appellee also testified he was earning $4 an hour and working ten, twelve, or sixteen hours a day, six and seven days a week. He testified he was paid time and a half for overtime. It would certainly appear to this court that, based upon the salary of $4 per hour, ten hours a day, five days a week, the total wages would equal $200 a week and would be the minimum figure according to the evidence before us.

The determination of average weekly earnings is governed by Ala.Code, Tit. 26, § 279(G) (1940), wherein several methods of computation are set forth. The applicable portion, in this instance, is as follows:

"Where the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof which the employee earned wages shall be followed, provided results just and fair to both parties will thereby be obtained. . . ."

 Our courts have held that this method is not mandatory, but allows the trial court to exercise its discretion in determining whether its use is fair and just to both sides. Brunson Milling Co. v. Grimes, 267 Ala. 395, 103 So.2d 315; Aluminum Workers International v. Champion, *supra*.

 In this instance, we do not find an abuse of discretion by the trial court in regards to justice or fairness to the parties by its finding of $200 per week average wages.

 Assignments of error 8, 9, 10, and 43 urge error in the lower court's finding

that the appellant should pay all medical expenses owed for the treatment of plaintiff's injuries, and further holding that the court did not determine the issue of medical expenses but reserved the same within the breast of the court. The court also stated that if the defendant should fail to pay medical expenses, then upon petition to the court, the medical expenses will be determined. We note that the lower court stated it understood all medical expenses involving the injury in question had been paid by appellant. We take the view that the court was merely providing for the contingency of a bill coming in that had not been paid as was asserted. Upon that occurrence, and upon petition to the court, the court would ascertain whether the bill was, in fact, one of the medical expenses for which the appellant was liable.

■ It is the general rule on reviewing by certiorari a judgment in a workmen's compensation case that rulings on admission of evidence will not be considered if it appears the conclusion and judgment are supported by legal evidence. Collins v. Central Foundry Co., 5 Cir., 263 F.2d 712; Pinto Island Metals Co. v. Edwards, *supra*; Tiger Motor Co. v. Winslett, 278 Ala. 108, 176 So.2d 39. However, if it plainly appears that the conclusions of the court were reached after consideration of large quantities of patently illegal evidence, the judgment may be reversed. O'Dell v. Myers, ·52 Ala.App. 558, 295 So.2d 413 (1974).

Regardless of the fact we have reversed and remanded the case because of insufficient evidence present for us to determine temporary total disability, we will further discuss the appellant's assignments of error relating to the testimony of John Newman. Appellant asserts error in allowing Newman to testify as to the employability limitations of appellee and his chances of employment at various plants in the Gadsden area.

Newman testified to having 39 years experience with the employment service. He had been in the Gadsden area since 1945, and recently retired as manager of the employment service there. He stated he was familiar with jobs, requirements, and industry in the area.

We have previously determined that under appropriate circumstances and questioning testimony by one so qualified is admissible. See Unexcelled Manufacturing Corp. v. Ragland, 52 Ala.App. 57, 289 So.2d 626; Petter v. McKee, Inc., 270 Minn. 362, 133 N.W.2d 638; Lee v. Minneapolis St. Ry. Co., 230 Minn. 315, 41 N.W.2d 433.

Newman was asked to reply to the following question which was proposed *after* Dr. Williams had testified to the injury, operation, and had given his opinion that appellee had a five percent permanent partial disability to the body as a whole:

"Q All right, sir. Now, I will ask you assuming that Mr. England—William P. England, the .plaintiff in this case—has a five per cent permanent disability about his body due to his back being operated on at L-4 and L-5—that is Lumbar Vertebra 4 and Lumbar Vertebra 5—being operated on by Dr. Williams and assuming that he has back injury—assuming that—and that it is permanent, I will ask you to tell the court what percentage of permanent disability Mr. England has suffered in his employability or chances of employability on the Labor market not just in Etowah County and Cherokee County but the surrounding counties and areas?

. . . . . .

"A Well, I was coming up to that. I do not try to analyze a person's physical ability in being able and qualified for different types of employment. I try to determine what the man has left to be employed with and my determination is made on what the man has left to do a job with so to speak, not physical but the employability that he has left to do it with and I take into consideration naturally the physical reports, but I go on the basis of what industry can this man

574

be employed in, what is his possibility of getting employment in the field he was in or in some other field. He doesn't necessarily have to be in the field he is in now. To go further and state further while I am making this statement I would state that this man—

. . . . . .

"Q My question to you Mr. Newman, is this and please answer this way. I ask you first of all do you have a judgment after your interview and after talking with him assuming he has a five per cent permanent partial disability to his body as a whole due to his back injury —assuming that fact to be true and assuming the history that you got from him which was that he is a Millwright and that is all he has ever known and assuming that you know what the requirements are—

. . . . . .

"A Eighty-five to ninety per cent employability limitation permanent to his entire body."

 From the above quoted testimony, Newman testified as to his judgment of employability *assuming* the propounded facts (which were already in evidence) to be true. In other words, he was testifying to a hypothetical question based upon his knowledge and expertise in the area. The law in Alabama is clear that an expert may testify to facts based on personal knowledge or upon a hypothetical based upon facts already in evidence. See Blakeney v. Ala. Power Co., 222 Ala. 394, 133 So. 16. For a discussion concerning expert testimony of this nature, see the opinion of Mr. Justice Maddox in Hagler v. Gilliland, 292 Ala. 262, 292 So.2d 647, decided on April 4, 1974.

We feel it necessary to point out that in the recent case of Unexcelled Manufacturing Corp. v. Ragland, *supra*, we allowed the expert testimony of Newman based upon facts *personally known* to him, along with the interview and his knowledge of job availability in the area. We pointed

out in *Ragland* that Newman personally observed the claimant's injury, i. e., he noted the claimant had a stiff ankle, walked with a severe limp, and got about very slowly. This is contrasted to the instant case where Newman did not testify he personally observed the injury, etc., but testified to a propounded hypothetical on facts in evidence.

 As to the *probability* of employment at various plants in the Gadsden area we feel Newman, in this instance, was qualified to so testify and, accordingly, assignments of error to the contrary are without merit.

All assignments of error having been considered, the judgment is due to be reversed and remanded in accord with our observations above.

Reversed and remanded.

WRIGHT, P. J., and BRADLEY, J., concur.