373 So.2d 1136 (1979)
JAMESTOWN CORPORATION and William B. Warlick, as Trustee in Bankruptcy for Jamestown Corporation
v.
Jonnie WARD.
Civ. 1695.
Court of Civil Appeals of Alabama.
July 18, 1979.
*1137 William C. Wood, Jr., of Norman, Fitzpatrick & Wood, Birmingham, for appellants.
Oliver P. Head of Wallace, Ellis, Head & Fowler, Columbiana, for appellee.

ON REHEARING
BRADLEY, Judge.
Upon application for rehearing the original opinion in this cause is withdrawn and the following opinion is substituted therefor.
This is a workmen's compensation case wherein a judgment was rendered in favor of the widow for death benefits when her husband's death resulted from a heart attack. Defendants appeal from that judgment and from the order overruling their post-trial motion. We affirm in part and reverse in part.
At the time of his fatal heart attack on January 29, 1974, the deceased, Robert P. Ward, was employed as plant supervisor for defendant Jamestown Corporation. He had held this position for approximately a year prior to his death. On the evening of October 31, 1973, some three months before his demise, Mr. Ward had suffered his first heart attack, following a day at work during which he spent over an hour manning a sledgehammer. After a period of treatment and recuperation Mr. Ward returned to work on a part-time basis in the middle of January 1974, confining his activities to office duties and paperwork.
On January 29, 1974 Mr. Ward's nephew picked him up at his home and drove him to work. As they entered the gate Mr. Ward took a pill from his pocket and placed it in his mouth, but by the time the vehicle was stopped and the door opened, Mr. Ward had lost consciousness. He expired in the parking lot.
During the period between Mr. Ward's first and second heart attacks, his employer had continued to pay him his full salary. Subsequent to Mr. Ward's death, defendant Jamestown Corporation was duly adjudged bankrupt, and defendant William B. Warlick was appointed trustee of the bankrupt company.
Mr. Ward's widow, Jonnie E. Ward, filed a complaint in the trial court seeking death benefits under the state's workmen's compensation laws. The parties stipulated below that the deceased's earnings were of a sufficient amount that Mrs. Ward, if otherwise entitled, would receive the maximum benefits due under the compensation statute, plus the maximum funeral benefits allowed by statute ($1,000).
The case was submitted to the trial court on the basis of oral testimony, depositions, stipulations and exhibits; however, pending a decision by the trial court, the plaintiff filed on June 9, 1978 a petition requesting *1138 the court to approve a lump-sum payment without commutation to plaintiff as provided in Title 26, § 279(C)9, Code of Alabama 1940 (Supp.1973) in the event a judgment favorable to plaintiff was rendered.
A judgment dated June 28, 1978 was entered by the trial court in this cause. The trial court found inter alia that the deceased suffered heart attacks on October 31, 1973 and on January 29, 1974 and died as a result of these heart attacks; that the first heart attack was caused by the deceased's overexertion in the use of a sledgehammer for an hour or longer while on the job; that the second heart attack was precipitated by the first one; that the two heart attacks were job-related and job-connected and were proximately caused by an accident which arose out of and in the course of the deceased's employment as supervisor for defendant Jamestown Corporation; and that the deceased, in the performance of his duties on the job, was exposed to dangers or risks materially in excess of those to which people not so employed were exposed; and the trial court awarded plaintiff the sum of $34,000, to be paid in a lump sum pursuant to Title 26, § 279(C)9, and additionally, the sum of $1,000 as a reasonable funeral expense. Defendants' motion to vacate the judgment or in the alternative to grant a rehearing was denied. By petition for writ of certiorari defendants sought review by this court of the judgment and the denial of their posttrial motion.
Defendants argue three principal points on appeal: one, that the trial court erred in considering expert medical opinion testimony offered on plaintiff's behalf because this testimony was elicited on the basis of a factually incorrect hypothesis; two, that the judgment is erroneous because plaintiff failed to show that the deceased was exposed, by reason of his employment, to a greater than normal risk of heart attack, which risk directly caused the employee's death; and three, that the trial court erred in ordering a lump-sum payment of the benefits awarded.
We find no merit to defendants' first contention. In Young v. City of Huntsville, Ala.Civ.App., 342 So.2d 918 (1976), cert. den. Ala., 342 So.2d 924 (1977), this court said:
The standard of review in workmen's compensation cases is whether there is any legal evidence to sustain the trial court's finding or conclusion or judgment....
. . . . .
In a workmen's compensation case the appellate court reviews the judgment of the trial court by writ of certiorari, i. e., the reviewing court will look to see if there are errors of law apparent from the face of the record and will only be concerned with whether or not there is legal evidence to support the findings of fact. The appellate court will not review technical questions regarding the trial court's rulings on objections to the admission of evidence. The reason for appellate restraint is that there is no statutory provision for setting out the trial court's rulings on admissibility in the findings of the trial judge and therefore these rulings are not part of the record. Thus, we do not reach the question raised by petitioner. [Citations omitted.]
See also, Defense Ordinance Corporation v. England, 52 Ala.App. 565, 295 So.2d 419 (1974).
The principle to be derived from the above authorities is that in reviewing workmen's compensation cases the appellate court will not reverse the trial court's judgment merely because the trial court erred in admitting into the record illegal evidence, provided the record contains any other legal evidence sufficient to support that judgment.
Defendants argue that the trial court should not have considered the testimony of Dr. Moore and of Dr. Burkhart because their testimony was given in response to a factually incorrect hypothetical question. The fact alleged to have been incorrectly hypothesized was that the deceased employee's use of the sledgehammer on the day preceding his first heart attack was not a type of physical activity normal to his job.
*1139 Upon review of this record we are not persuaded that the trial court erred in admitting the testimony of which complaint is made. There appears conflicting evidence of record, presenting a factual question for resolution by the trier of fact, as to whether such activity was "normal" for Mr. Ward's job. For instance, the testimony of one witness, Jerry Ward, was that the deceased normally engaged in strenuous physical activity on the job "just when particular problems arose." The testimony of another witness, Hayden Nesbitt, indicated that the deceased would engage in strenuous physical activity three to four times per week; that the deceased's duties "were to oversee everything that went on"; and that "if everything went alright, Mr. Ward didn't have anything to worry about." Nesbitt further testified that he had seen the deceased at times exerting great physical efforts in using a sledgehammer, driving nails, pulling cables, etc. The testimony of several other witnesses indicated that the deceased's principal duties were supervisory. Also, there is no testimony of any occasion when the deceased made vigorous use of a sledgehammer for an hour to an hour and a half, except on that occasion which preceded the first heart attack. In view of the conflicting tendencies of this and other testimony, we find no abuse of discretion in the trial court's ruling on the use of the hypothetical question.
Moreover, as the Alabama Supreme Court has stated, where there is conflicting evidence relating to a controverted fact, the hypothetical question may and should properly embrace only the facts tending to support the particular theory of the respective parties, and the opposite party, if desirable on cross-examination, may propound questions to the witness embracing the facts which tend to support his theory. Tucker v. Tucker, 248 Ala. 602, 28 So.2d 637 (1946); see also, George v. State, 240 Ala. 632, 200 So. 602 (1941).
We would also point out that the testimony of Dr. Moore (hereinafter set out) does not appear to have been premised on the assumption that the performance of strenuous physical activity was "not normal" in the deceased's job activities. At one point during questioning Dr. Moore was asked whether in his opinion there was a causal connection between the deceased's heart attack and his work. Counsel for defendants interposed an objection, whereupon Dr. Moore stated:
Well he had the heart attack. Denying he did that hard physical labor previously I don't know if he did that routinely everyday or not. You gave a history that he worked an hour or hour and a half with a sledge hammer and he had that heart attack that same night, it would seem to me that there was some connection there.
Thus, even if we were to hold that the hypothetical question complained of is improper and we do notwe view the material portions of Dr. Moore's testimony as a sufficient basis for the trial court's conclusion that the deceased's heart problems were job related.
In summary, we conclude that testimony given by Dr. Moore and Dr. Burkhart was properly considered by the trial court, and that the testimony of these two doctors, as well as that of the third medical expert, Dr. Jones, is sufficient, individually or in combination, to support the trial court's findings of fact.
Nor do we find merit to the second issue raised by defendants. Appellants question the trial court's judgment on the ground that plaintiff failed to show that deceased was exposed, by reason of his employment, to a greater than normal risk of heart attack, which risk directly caused the employee's death.
In Newman Bros., Inc. v. McDowell, Ala. Civ.App., 354 So.2d 1138 (1977), cert. den. Ala., 354 So.2d 1142 (1978), we stated that the test to be applied in cases of this kind is:
If in the performance of his job he has to exert or strain himself or is exposed to conditions of risk or hazard and he would not have strained or exerted himself or been exposed to such conditions had he not been performing his job and the exertion *1140 or strain or the exposure to the conditions was, in fact, a contributing cause to his injury or death, the test whether the job caused the injury or death is satisfied.
We also said in Newman that unusual strain or exertion not ordinary to the job is not required to be shown.
In the case at bar the record contains sufficient legal evidence to support the trial court's conclusions that the deceased's employment exposed him to greater than normal risks of heart attack and these risks precipitated or contributed to the fatal heart attack. The record indicates that the deceased's duties as Jamestown Corporation's plant supervisor required him to oversee several work crews totaling thirty to forty men as they poured and finished pre-fab concrete panels to specification in filling production orders. Mr. Ward worked sixty to seventy hours per week under pressurized conditions, driving himself and his men to meet construction deadlines and being responsible for correcting problems and breakdowns as they occurred.
On the day preceding Mr. Ward's first heart attack, the day's work schedule was behind and Mr. Ward, in an effort to make up lost time, used a sledgehammer for an hour or longer. That afternoon he called home to tell his wife of chest pains and nausea. He went home that evening, experienced more problems, and was admitted to the hospital. His family physician, Dr. Moore, diagnosed his condition as a myocardial infarction, or heart attack.
According to Dr. Moore's testimony in deposition, there was no way to determine to a mathematical certainty what caused Mr. Ward's heart attack, but a man Mr. Ward's age (approximately fifty-nine) that would subject himself to that hard physical labor (with the sledgehammer) "certainly could bring about a heart attack from that type of work." Dr. Moore stated that Mr. Ward's going back to work would "certainly be a factor in his second heart attack"; that the second heart attack was related to the first one because "once you have one it is a known fact that you are later on going to have another one"; and that Mr. Ward's return to work "certainly was the cause of his death." On the basis of this and other testimony in the record we cannot agree with petitioners that the trial court's conclusions are unsupported by legal evidence.
However, we do find merit to the third issue raised by defendants. The general rule in workmen's compensation cases is that the statute in effect at the time of the injury is the statute to be applied. Loggins v. Mallory Capacitor Co., A Corp., Ala. Civ.App., 344 So.2d 522 (1977). At the time of Mr. Ward's heart attacks, October 31, 1973 and January 19, 1974, the following statutes were in effect, found in Tit. 26, Code of Alabama 1940 (1973 Supp.):
§ 279(C)1. Permanent Partial Disability.
. . . . .
(9) Payments.
In case of an injured employee whether permanent, partial, or however injured, or death of an employee, and only in such cases as are presented to the court by petition the circuit judge with competent jurisdiction may decide how the compensation shall be paid to the injured employee or his estate upon a final settlement or judgment whether by a trial or by agreement....
. . . . .
§ 283. Death compensation.In death cases where the death results proximately from the accident within three years, compensation payable to dependents shall be computed on the following basis and shall be paid to the persons entitled thereto without administration, or to a guardian or such other person as the court may direct, for the use and benefit of the person entitled thereto.
(A) Persons Entitled to Benefits.
1. If the deceased employee leaves dependent widow or widower and no dependent child, there shall be paid to the widow or widower thirty-seven percent of the average weekly earnings of the deceased.
. . . . .

*1141 (B) Maximum and Minimum Death Compensation.
The compensation payable in case of death to persons wholly dependent shall be ... paid during dependency, not exceeding five hundred weeks, payments to be made at the intervals when the earnings were payable, as nearly as may be unless the parties otherwise agree. [Emphasis added.]
It is obvious from a reading of these two statutes that subsection (C)9 of § 279 allows for lump-sum payment of death benefits to the estate of the deceased employee, and that § 283 provides for payment of death benefits to the widow.
Plaintiff contends that these two statutes should be construed in pari materia to effect the obvious intent of the legislature. She also points to that portion of the trial court's written judgment which states that the court below ordered a lump-sum payment of benefits (rather than payments over a period of five hundred weeks) after consideration of plaintiff's age, general demeanor, integrity and good character, and after noting that defendant Jamestown Corporation is bankrupt.
However, we do not think these factors which were considered by the court can form the basis for the lump-sum award granted in this case. Section 279(C)9 is inapplicable to the case at bar since the record fails to show that plaintiff is seeking benefits on behalf of the deceased's estate. In fact, counsel for plaintiff expressly stated during the trial of this cause that "[t]he deadman's estate is not involved in this proceeding whatsoever. It would not tend to increase or diminish his estate in any manner." Section 283, which allows payment of death benefits to the deceased's widow, does not provide for lump-sum payments of such benefits. Consequently, neither statute can serve to justify the lump-sum award granted.
The statute governing lump-sum payments of the kind herein contested is Code of Alabama 1940, Tit. 26, § 299 (1973 Supp.), currently codified as Code of Alabama 1975, § 25-5-83. Section 299 provides that workmen's compensation benefits may be paid in one or more lump sums if the parties agree to such method of payment and the agreement is approved by the court. This section has consistently been construed as requiring the agreement of the parties in order for a lump-sum payment to be made. See e. g., United States Steel Corp. v. Baker, 266 Ala. 538, 97 So.2d 899 (1957). A lump-sum judgment is erroneous in the absence of a showing that the parties agreed, with the approval of the court, that such a judgment could be entered. Richardson Lumber Co. v. Pounders, 254 Ala. 285, 48 So.2d 228 (1950).
The record in this case does not indicate that defendants have ever agreed to a lump-sum payment. In the absence of such an agreement, we must hold that the trial court erred as a matter of law in ordering such a method of payment.
That portion of the trial court's judgment holding that the deceased died as a result of a job-connected injury is affirmed; that portion of the judgment making a lump-sum award to the widow of deceased is reversed and the cause remanded for the award of compensation in conformity with the appropriate statutes.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
APPLICATION FOR REHEARING OVERRULED.
HOLMES, J., concurs.
WRIGHT, P. J., concurs specially.
WRIGHT, Presiding Judge, concurring specially:
I concur in the affirmance of the judgment of the trial court finding that the plaintiff is entitled to recover. I find the legal evidence sufficient to support the conclusion that the employment of the deceased caused or materially contributed to his death. Newman Bros., Inc. v. McDowell, 354 So.2d 1138 (Ala.Civ.App.1977). The trial court found that the deceased suffered two heart attacks. Our review of the depositions of the medical experts indicate *1142 it was their opinion that the second heart episode which precipitated death was a "heart event" rather than a "heart attack" and that the "event" resulted because recovery from the "attack" had not been completed. "Heart event" means that arrythmia of the heart occurs and it is unable to pump the blood. A heart attack occurs when there is a blood clot or a blockage, due to disease, of one of the arteries of the heart causing death of heart muscle.
The evidence was that the deceased had some arrythmia or irregularity of the heart during hospitalization. To correct and regulate the heart beat there was a pace wire inserted. It was the opinion of the deposed physician that the deceased died from a reoccurrence of arrythmia or fibrillation of his heart rather than a second heart attack. Medically, such fibrillation is not termed a heart attack but is termed a "heart event." At least one of the physicians testified that the "event" was a consequence of the first "attack." The heart attack of October 31, 1973 was sufficiently shown to have been caused by the stress and physical activity of the job.
It is my purpose to show that the trial judge reached the correct decision though not a completely correct finding of fact. The correct result is all that is required upon our review. Staub v. Alabama Power Co., 350 So.2d 386 (Ala.1977). I would further like to make clear that the decision of the court must be considered as limited to the facts of this case. It is no precedent for the proposition that a second heart attack or heart event following a prior job-related heart attack will require a determination of employer liability for workmen's compensation. Each case must be decided upon its own facts.
I concur with the result of the decision in all respects.