HARRIS, Judge.
Appellant, Horace Peterson, was indicted for Rape in the First Degree by the Mobile County Grand Jury on October 22, 1982. At trial, on March 8, 1983, the jury found appellant guilty as charged in the indictment. The State filed a motion for habitual offender status and presented certified copies of a conviction for Burglary Second Degree and for Burglary Third Degree. Pursuant to the Habitual Felony Offender Statute, appellant was sentenced to a term of life in the State penitentiary.
Althea McQueen testified at trial that on August 6, 1982, at about 7:00 p.m. she attended a party at the home of Sonja Broadnax where everyone drank beer and wine. At the party Ms. McQueen saw appellant, who grabbed her and tried to talk with her. She asked Sonja to tell appellant to leave her alone. At about midnight the party began to break up, with some people going home and some going to Burger King. She was supposed to walk home with a friend, but went back into the house to get her hat, and on returning found that her friend had gone on. She decided to ask Willie Ray Robinson to take her home. Ray said to wait a minute as he was talking with some other men. Meanwhile, appellant came up, grabbed her and pulled her to the side of the house where he threw her down in some trees. Appellant sat on top of her and she pled with him to let her go. She heard Sonja’s mother calling her and tried to answer, but appellant put his hand over her mouth. He pulled her pants down, unzipped his pants and raped her. She screamed, but he pushed her down and she hit her head. She blacked out, but woke up when the police came.
An ambulance took Ms. McQueen to the hospital where the presence of sperm in her vagina was confirmed.
Issac McPhearson reported that he arrived at the party at about 10:30 p.m. with two other men. At about 12:30 a.m., they left and found Ms. McQueen outside talking to the appellant in the street. She was hollering at him to leave her alone, so McPhearson and his friend approached appellant and told him they would take Ms. McQueen home. Appellant reached into his back pocket and asked McPhearson what he would do about it. McPhearson went inside and reported what was going on, then went to the pay phone on the corner and called the police. When the officers arrived, they walked around to the side of the house and turned on their flashlights. When the light hit appellant he was unclothed and Ms. McQueen seemed to be unconscious.
Ronnie Miller testified that he arrived at the party at 11:30 p.m. with three other men. At about 12:30 a.m., he left the party and saw appellant and Ms. McQueen outside on the street. She was crying, telling him to let her go, but he didn’t. He and his friends decided to go back and report what they had seen to the hostess of the party. When they returned they looked for appellant and Ms. McQueen but couldn’t find them. When the police arrived he saw appellant on top of Ms. McQueen and she appeared to be unconscious.
Officer Robert Hughes of the Mobile Police Department testified that he arrived on the scene at approximately 1:15 a.m. in response to a call. After speaking with some people at the front of a residence, he *984 and his partner searched the rear of the house with flashlights. They found a black male, later identified as appellant, on top of a female. His pants and underwear were pulled down below his knees. The girl appeared to be unconscious.
Detective Sergeant Wayne Farmer testified that, when he arrived, he read appellant his Miranda rights at the scene and interviewed him. Appellant stated that he had had sex with a lady in the back yard. When asked why her face appeared inflamed and pink under her cheek, he replied that he might have hit her.
Sonja Broadnax, hostess of the party, testified on behalf of the defense that appellant arrived at the party at about 7:00 p.m. and Althea arrived at about 8:00 p.m. with her mother, brother and sister. She stated that she saw appellant and Ms. McQueen dancing a slow dance and hugging each other during the course of the party, and denied that Ms. McQueen had said she wanted appellant to leave her alone. Ms. McQueen left the party at 10:00 p.m. and did not return. She reported that she knew of occasions in the past when Ms. McQueen had been beaten by her mother.
Sheryl Green, who arrived at the party at 6:30 p.m., testified that she had seen appellant and Ms. McQueen together slow dancing and kissing. She left the party at about 12:30 a.m., and saw appellant and Ms. McQueen outside on the sidewalk where he was holding her and her head was on his chest.
Siletta Broadnax testified that she saw appellant and Ms. McQueen slow dancing and kissing during the party. Around 12:00 midnight she left the party and when she returned she saw the ambulance leaving. She saw Ms. McQueen a few days later and didn’t notice any cuts, bruises or scars. She said Ms. McQueen acted normal.
The only issue presented on appeal is whether appellant was sentenced under the proper section of the Habitual Felony Offender Act as set forth in § 13A-5-9(b), Code of Alabama (1975). Appellant contends that one of the convictions received into evidence at the sentence hearing should not have been used under the Habitual Felony Offender Statute to enhance appellant’s sentence. It is clear, however, that appellant made no objection to the admission of this evidence at the sentence hearing. It is settled law that the trial court will not be put into error on grounds not specified at the sentence hearing. Smith v. State, 409 So.2d 455 (Ala.Cr.App.1981); Stinker v. State, 344 So.2d 1264 (Ala.Cr.App.1977); Rogers v. State, 52 Ala.App. 573, 302 So.2d 547 (1974). There being no proper objection at the trial level, the sentencing must be affirmed.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.