This is a workmen's compensation case.
Employees filed a consolidated claim for workmen's compensation benefits before the trial court. The trial court entered a judgment for all of the employees, finding that each employee had suffered a one hundred percent temporary total vocational impairment and loss of ability to earn from March 8 through March 14. Employer appeals. *Page 516 
The standard of review in workmen's compensation cases is whether there is any legal evidence to support the trial court's findings. We consider neither the weight of the evidence nor the propriety of the trial court's findings.Stebbins Engineering Manufacturing Co. v. White,457 So.2d 425 (Ala.Civ.App. 1984).
The record on appeal reveals the following:
Employees work for The Goodyear Tire Rubber Company. Employees were injured within the line and scope of their employment. Each employee was then placed on "light duty status" during the week of March 1, 1982. It is unclear whether employees received their full wages during this week. Apparently, under union contract, the employees were to receive ninety percent of normal pay during their light duty period.
During the week of March 8, 1982 through March 14, 1982, employer shut down its plant for economic reasons. All Goodyear employees were laid off during this week. The parties agree that employees would have been on light duty status during the week of March 8 through March 14 had there not been an economic shutdown.
After an ore tenus hearing the trial court found that employees suffered a one hundred percent loss of ability to earn and temporary total vocational impairment from March 8 through March 14, and awarded them temporary total disability benefits.
On appeal, employer contends that there was insufficient evidence to support the trial court's finding that employees were temporarily totally disabled during the week of March 8th. We disagree.
Our courts have found the following language persuasive:
 "An employe who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled."
Lee v. Minneapolis Street Railway Co., 230 Minn. 315,41 N.W.2d 433 (1950) (quoted in Brunson Milling Co. v. Grimes, 267 Ala. 395, 103 So.2d 315 (1958)). Moreover, this court has held that temporary total disability applies to the healing period during which the employee is recovering and unable to perform his ordinary work duties, and the healing period ends when maximum recovery is reached. See Defense Ordinance Corp. v. England,52 Ala. App. 565, 295 So.2d 419 (1974); 2 A. Larson, The Law ofWorkmen's Compensation § 57.12 (1983).
Temporary total disability is usually established by evidence of wage loss. Defense Ordinance Corp. v. England, supra.
However, it has been held that where an employee has not reached maximum recovery, works only part time, and his disability prevents full-time employment, temporary total disability benefits could be paid. T G Y Stores Co. v.Higdon, 437 So.2d 1035 (Ala.Civ.App. 1983).
Employer argues that because employees were engaged in "light work" they were manifestly not totally disabled. However, total disability does not mean absolute helplessness or complete physical disability, but instead, means an inability to perform the work of one's trade or obtain reasonable gainful employment. Carroll Construction Co. v. Hutcheson,347 So.2d 527 (Ala.Civ.App. 1977).
Dr. Stewart, a specialist in the field of vocational rehabilitation, testified that an employee is placed on "light duty status" when the employee has a medically documented body function problem that prevents him from performing his customary job. Generally, an employee in such status is working at a reduced physical demand level when compared to the physical demands of their normal job. Lindsey Elsberry, employee benefit representative for the United Rubber Workers Union, testified that the policy of the employer was to put injured employees back to work as soon as possible to keep sick leave and insurance rates down. *Page 517 
The parties stipulated at trial that light duty implies at least a partial degree of vocational impairment. Dr. Stewart stated that this vocational impairment affected employees' ability to compete in the labor market. He believed that there was not a stable market for the employees given their injuries and that only employer (Goodyear) would be willing to hire employees for the limited work that they were able to perform. Thus, when employees were laid off, they were unable to earn any wages during this period because of their physical injuries. Employees were not completely healed during this period or they would have been back on regular duty. Nor is it disputed that employees were not completely healed during the week of the shutdown since they would have been on light duty during this week. Consequently, employees were still in the healing process during the week of March 8 through March 14 and had not reached maximum recovery from their job-related injuries. Thus, employees suffered a wage loss for the week in question as a result of being in a light duty work status. The trial court was not in error in finding employees temporarily totally disabled during the week of March 8.
Employer, however, attacks Dr. Stewart's testimony, arguing that the doctor was without a sufficient basis for forming any opinion of the degree of employees' occupational disability.
Although Dr. Stewart did not personally interview the employees, he did review employees' medical records and was familiar with general employment conditions in the region. He was thus able to form reasoned conclusions based on this information and his expert knowledge. We cannot say that there was no basis for Dr. Stewart's conclusions. In addition, we note that employer did not object to Dr. Stewart's testimony during the trial and stipulated that the doctor was an expert in the field of vocational rehabilitation. Even though we find that the trial court could have properly relied on Dr. Stewart's testimony, the trial court was not bound to accept the expert's testimony.
As a final ground for reversal, employer contends that the trial court erred in awarding benefits because there was no causal connection between employees' injuries and their temporary loss of ability to earn.
Employees, unquestionably, would have been entitled to compensation benefits for the days immediately following their injuries when they were unable to work and might have continued to be so entitled while on "light duty status." See T G YStores Co. v. Higdon, supra; Speigner v. McGhee, 55 Ala. App. 384, 316 So.2d 215 (1975). Thus, we see no reason why employees may not be entitled to receive temporary total benefits in this instance. There was evidence before the court to support a finding that their injuries contributed to their loss of wages during the week in question and that such loss was not solely the result of economic conditions. See, e.g., Janusz v. KistlerInstrument Corp., 62 A.D.2d 1128, 404 N.Y.S.2d 454 (1978). We conclude that the trial court did not err in finding employees totally disabled during the week of March 8 and awarding them benefits during this period.
AFFIRMED.
HOLMES, J., concurs.
WRIGHT, P.J., concurs in the result.