This is a workmen's compensation case. Petitioner, Cecilia A. Loggins, filed suit against respondent, Mallory Capacitor Company, a Corporation, in the Circuit Court of Madison County seeking compensation under Alabama's workmen's compensation law for injuries suffered while in the employ of respondents. After a trial before the court sitting without a jury, a judgment was rendered in favor of petitioner. The court found that she suffered a forty percent loss of the use of her left leg and awarded compensation commensurate with such loss. Petitioner seeks a review of that judgment, claiming the trial court erred by awarding her compensation under the provisions of Title 26, Section 279 (C)(1), Code of Alabama 1940 (Recomp. 1958).
On September 11, 1973 petitioner was injured when she slipped and fell while carrying a tray of capacitors to her place on the production line at respondent's plant in Huntsville, Alabama. It was stipulated that the injury arose out of and in the course of petitioner's employment with respondent. Petitioner said that immediately upon her fall she felt "terrible" pain in her left ankle. She was taken to the emergency room of a local hospital and the ankle was X-rayed. She was given medication for the pain, advised to put no weight on the injured ankle and sent home. Two days later a cast was put on her left leg; she wore a cast on that leg for approximately seven weeks after the fall occurred.
Dr. Donald Beck, an orthopedic surgeon, testified that he first saw petitioner on January 3, 1974. At that time she complained of pain in her left ankle at any weight bearing, persistent swelling, stiffness and limitation of motion in that ankle. An X-ray revealed that the ankle was fractured and had not yet healed. Dr. Beck prescribed that petitioner wear a brace to alleviate the pain, but the pain continued.
On March 1, 1974 Dr. Beck performed surgery on petitioner's left ankle, inserting three screws into the ankle at various positions to ensure proper healing of the bones and ligaments. Another cast was applied and remained on petitioner's left leg until May 30, 1974. Thereafter petitioner walked with the aid of crutches.
On June 13, 1974 petitioner again visited Dr. Beck, complaining of considerable pain in her left ankle and foot with any weight bearing. On July 11th Dr. Beck suggested that one of the screws in the ankle be removed; this was done sometime between August 5 and August 15.
Petitioner continued to feel pain in her left ankle, even though anatomically her bone had healed. On November 25, 1974 she told Dr. Beck that after two hours of walking and standing the pain was so intense that she would have to sit down and rest. Thereafter, petitioner was treated with cortisone injected directly into the ankle. This afforded her relief from the pain for approximately one week. The cortisone treatments continued between December 1974 and January 1976. In March 1976 the two remaining screws were removed from the ankle. At the time of trial Dr. Beck had not seen petitioner since the removal of the screws.
Dr. Beck's assessment of petitioner's condition at the time of trial was that petitioner reached maximum recovery from her injury on April 30, 1975, and she now has a forty percent permanent impairment of her left leg below the knee. He suspects this condition is due to post traumatic arthritis. The result of the impairment is pain, swelling and limitation of motion of the ankle joint. Dr. Beck has suggested that petitioner wear an elastic stocking to reduce the swelling. If her pain persists, future surgery will be required.
Petitioner testified that she still suffers pain in her left leg below the knee, especially after she has been standing or walking for two hours or more. The only way to relieve the pain is to stay off her feet and elevate her left leg. She has not worked since the injury.
Petitioner has completed high school and two years of trade school. Other than her work on the production line at Mallory, she has experience as a sales clerk. She is now *Page 524 
forty-six years old, married, and has three children living at home.
Dr. William Breen, an employment counselor, testified as an expert that in his opinion petitioner was unemployable, primarily because she is unable to pass the physical examination required by most companies and because prospective employers do not like to hire employees with a history of workmen's compensation claims.
The trial court made the following findings of fact and conclusions of law, based on the evidence and its observation of petitioner while she was in the courtroom: that petitioner has a forty percent permanent partial loss of the use of her left leg due to a job related injury; that at the time of her injury petitioner's average weekly wage was $84; that petitioner was temporarily totally disabled for eighty-five weeks until April 30, 1975, at which time she reached maximum recovery; that petitioner has received compensation at the rate of fifty-five percent of her average weekly wage, or $46.20 per week; that petitioner suffers a forty percent permanent partial disability of the left leg for which she is entitled to eighty weeks of compensation at $46.20 per week; that respondent is entitled to a credit of seventy weeks for the temporary total disability period of eighty-five weeks to be applied against the eighty weeks of permanent partial disability; and that respondent has paid petitioner for ninety-five weeks of disability and owes petitioner no additional amounts as compensation. A total sum of $146.56 for medical expenses was found to be unpaid by respondents and they were ordered to pay it.
Although petitioner has submitted nineteen issues for consideration by this court, the bulk of her argument is directed to the finding by the trial court that she suffered a forty percent permanent partial loss of the use of her left leg and was compensated for this loss according to the statutory schedule found in Title 26, Section 279 (C)(1), rather than finding that petitioner had received a permanent impairment of the body as a whole which would entitle her to compensation under Title 26, Sections 279 (A) and (C)(3), Code of Alabama 1940 (Recomp. 1958).
Petitioner's injury occurred on September 11, 1973. The amended Section 279, which appears as Title 26, Section 279, Code of Alabama 1940 (Recomp. 1958) (Supp. 1973), was not approved until September 17, 1973, six days after petitioner was injured. The statute in effect at the time of the injury is the statute to be applied. Fairfax Manufacturing Co. v. Bragg,342 So.2d 17 (Ala.Civ.App. 1977); Harris v. National TruckService, 56 Ala. App. 350, 321 So.2d 690 (1975). Therefore, the unamended Section 279 is applicable in this case. The applicable portions of the statute as applied by the trial court are as follows:
"Following is the schedule of compensation:
 "(A) For injury producing temporary total disability, fifty-five percent of the average weekly earnings received at the time of injury, subject to a maximum and minimum weekly compensation as stated in section 289 of this title; but if at the time of injury the employee received average weekly earnings of less than the minimum stated in section 289 of this title, then he shall receive the full amount of such average weekly earnings per week. This compensation shall be paid during the time of such disability, not, however, beyond three hundred weeks. Payments are to be made at the intervals when the earnings were payable, as nearly as may be.
. . . . .
 "(C) 1. For permanent partial disability the compensation shall be based upon the extent of such disability. In cases included in the following schedule the compensation shall be fifty-five percent of the average weekly earnings, during the number of weeks set out in the following schedule:
. . . . .
 "For the loss of a foot, one hundred and twenty-five weeks.
. . . . . *Page 525 
 "For the loss of a leg, one hundred and seventy-five weeks.
. . . . .
 "3. In all cases the permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member, but in such cases the compensation in and by said schedule shall be in lieu of all other compensation. In case of permanent disability, due to injury to a member resulting in less than total loss of use of such member, not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of the injury to the member bears to its total loss."
Pursuant to this law, the trial court found a forty percent permanent partial impairment to the left leg, and awarded benefits according to the schedule in Section 279 (C), supra.
The rule of review of the evidence in workmen's compensation cases was stated in Avondale Mills, Inc. v. Tollison,52 Ala. App. 52, 289 So.2d 621 (1974):
 ". . . When there is any legal evidence or reasonable inference therefrom to support the facts found by the trial court, such findings are conclusive and will not be disturbed on appeal." 52 Ala. App. at 56, 289 So.2d at 625.
In the case at bar there is ample evidence to support the fact findings of the trial court. The evidence is without dispute that petitioner injured her left ankle and, according to the treating physician, reached maximum recovery on April 30, 1975. Petitioner testified the pain she suffered was confined to the left leg below the knee. There was no evidence that any other part of her body was affected by the ankle injury.
Nor did the trial court misapply the law to the facts by awarding compensation according to the schedule found in Title 26, Section 279 (C)(1), supra. Compensation under that section is required where there is an injury resulting in the loss of the use of a member and where the loss is not accompanied by any other physical disability of the body. Leach ManufacturingCo. v. Puckett, 284 Ala. 209, 224 So.2d 242 (1969); cf. Rominev. McDuffie, Ala.Civ.App., 341 So.2d 952 (1977). Commenting on the restriction under this statute the supreme court said in the Leach Manufacturing Co. decision:
 ". . . [T]he payment of the specified sum is intended to fully compensate the injured employee for the injury sustained. This would certainly include loss of earning capacity or inability to secure employment. True, in many cases the amount awarded (allowed) seems insufficient or inadequate, but this is a matter entirely within the function of our legislature." 284 Ala. at 214, 224 So.2d at 247.
Likewise, in the case at bar the trial court found that petitioner's disability was confined to the left leg below the knee and did not affect any other part of her body. The compensation which was awarded for loss to the use of her leg was intended to "fully compensate the injured employee for the injuries sustained," and "would certainly include loss of earning capacity or inability to secure employment." We find no error in this aspect of the trial court's findings.
No reversible error having been argued, this case is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.