This is a workmen's compensation case.
The plaintiff claimed compensation for a disabling occupational disease sustained while in the employ of the defendant, Dan River Mills, Inc. The trial judge found that plaintiff had contracted an occupational disease, byssinosis, and that the byssinosis had been caused by a hazard peculiar to the textile industry. As a result of this disease, the court found that plaintiff was 100% permanently disabled and awarded accumulated and future compensation. Defendant appeals.
The issues before this court are whether there is any legal evidence to support the findings of the trial court that plaintiff (1) has the occupational disease of byssinosis and (2) that the disease was caused by a hazard peculiar to plaintiff's place of employment.
The record reveals the following: The defendant is a manufacturer of cotton products. The plaintiff is fifty-eight years of age and has been employed by the defendant since 1935. He earns $3.40 per hour as a weaver.
Plaintiff's job is to operate eighty-six looms in the plant's weave room. The atmosphere in the weave room is constantly dusty and the employees running the looms must blow the dust from the looms with air hoses in order to properly operate the machines. The weave room is apparently not ventilated and there are no exhaust fans to remove the dust from the area. The employer provides no safety equipment to its workers to prevent inhalation of the ever present dust.
In 1967, plaintiff began experiencing chest discomfort and coughing which he testified was most noticeable on Monday mornings. When the symptoms progressively worsened, plaintiff terminated his employment in January, 1976.
In December, 1976, Dr. Goodman, plaintiff's physician examined him and diagnosed his condition as byssinosis. Plaintiff was subsequently referred by defendant to two other medical specialists, Drs. Branscomb *Page 1234 
and Williams, who diagnosed his disease as not being byssinosis. Plaintiff then instituted the instant action for workmen's compensation benefits.
After hearing the evidence ore tenus, the trial court found for the plaintiff. Specifically, the learned judge's order found in part the following:
 "3. On January 17, 1976, the Plaintiff sustained an occupational disabling disease arising out of and in the course of his employment with the Defendant, Dan River Mills, Inc., to wit, byssinosis.
 "4. The Plaintiff has suffered an occupational disease as defined in Article 4 Title 25-5-110 Et Seq. to wit byssinosis, caused by a hazard peculiar to the textile industry." (Emphasis supplied.)
The defendant appeals and contends in a well reasoned brief that the plaintiff failed to prove that he in fact has byssinosis, and further, (assuming arguendo the plaintiff has byssinosis) the plaintiff failed to prove that the byssinosis was caused by an agent present at the place of employment.
We agree with the defendant that the burden is upon the employee to establish to the satisfaction of the trial court that his disease arose out of and in the course of his employment. Kroger Co v. Millsap, 280 Ala. 531, 196 So.2d 380
(1967); Williams v. Tennessee Valley Butane Co., 265 Ala. 145,90 So.2d 84 (1956). However, we note that in this court's review of a workmen's compensation case, we will not review the weight or preponderance of the evidence. Fairfax Mfg. Co. v.Bragg, Ala.Civ.App., 342 So.2d 17 (1977); Romine v. McDuffie, Ala.Civ.App., 341 So.2d 952 (1977). Instead, if there is any legal evidence or a reasonable inference therefrom to support the findings of fact by the trial court, those findings will not be disturbed on appeal. Cochrum v. Kinro Industries, Inc., Ala.Civ.App., 352 So.2d 456 (1977); Conagra v. White, Ala.Civ.App., 348 So.2d 502 (1977). As set forth below, our review of the record indicates there is evidence to sustain both of the learned judge's conclusions which are at issue here.
To facilitate the discussion of the issues in this case, we briefly review the technical aspects of the disease byssinosis and its causes.
The record reveals that byssinosis is an occupational respiratory disease long associated with workers in the cotton industry. In its later stages, its symptoms are indistinguishable from those of bronchitis and pulmonary emphysema. However, in its early stages byssinosis is distinguishable from these other two diseases in that the subject with byssinosis experiences a symptom known as the "Monday Morning Syndrome." Subjects with bronchitis or emphysema do not experience this symptom. Victims who experience the "Monday Morning Syndrome" feel extreme chest discomfort on Monday mornings after a weekend absence from inhaling the ever present cotton dust in the mill. The Monday morning discomfort gradually decreases as the work week progresses, presumably because the victims again begin to inhale the cotton dust which causes the disease.
With respect to the causes of byssinosis, the record further indicates that the state of current medical knowledge is not such that there is agreement among the scientific community as to its exact cause. It is agreed however that the disease is virtually unknown outside the cotton textile industry. The primary difference of opinion among experts as to the cause of the disease is whether it is caused solely by inhaling cotton dust in general, or whether the dust which is inhaled must contain a substance known as bract, a leafy substance which grows on the cotton plant near the cotton boll. Although recent studies indicate that the incidence of the disease is highest in mill areas where the cotton dust contains greater percentages of bract, they also indicate that workers in plant areas where the bract content in the cotton dust is lowest (or virtually negligible) contract the disease as well. Given this state of the art we discuss each of the defendant's contentions.
The defendant first maintains that there was insufficient evidence presented at *Page 1235 
trial which establishes that plaintiff in fact has byssinosis. We do not agree inasmuch as our review of the record indicates there was conflicting testimony concerning the diagnosis of plaintiff's disease.
The record reveals that three medical experts examined plaintiff and testified as to their findings. All three were specialists in internal medicine and lung diseases. Each of the three had extensive experience in the treatment of occupational respiratory diseases.
Dr. Goodman, a practicing specialist in lung diseases and an associate professor in internal medicine at the University of Alabama in Birmingham, diagnosed plaintiff as having byssinosis. Dr. Goodman testified that byssinosis is caused by prolonged inhalation of the cotton dust. At one point in the questioning, Dr. Goodman testified as follows:
 "Q. . . . Doctor, with your examination and review of Mr. Foshee's history with inhalation of cotton dust over a period of years, which caused him to cough, wheeze, have tightness of the chest and loss in breathing capacity, is this one of the symptoms of byssinosis?
"A. Yes, sir.
 "Q. Can you diagnosis Mr. Foshee's ailment at this time as byssinosis?
"A. I have done so.",
and later:
 "Q. Doctor, with your findings of inhalation of cotton dust over a period of years, with the coughing, the wheezing, the tightness of the chest, what is your ultimate diagnosis of Mr. Foshee?
"A. That he has byssinosis."
Notwithstanding this testimony, the defendant introduced conflicting evidence by way of two expert witnesses.
Dr. Branscomb, head of the lung disease division of the University of Alabama Medical Center, testified that he diagnosed plaintiff's affliction as hypertension and bronchitis (possibly due to cigarette smoking), but not byssinosis. Dr. Branscomb stated that he had never heard of a case of byssinosis occurring in the weave room, that the bract and leaf material believed to cause byssinosis were in low concentration in that part of the mill, and the plaintiff's history of always having worked in that area was in no small measure responsible for the negative diagnosis. We note, however, that he could not be positive that plaintiff did not have byssinosis. At trial Dr. Branscomb stated:
 "Q. Yes, sir. There is no way — medically . . . that you can tell that this man does not have byssinosis, is it, Doctor Branscomb?
 "A. There's no way that one can positively say that this person has not — yeh, I think that's right. I don't think you can positively say that he doesn't have byssinosis.
"Q. All right, sir."
Defendant's second expert witness, Dr. Williams, is an expert in pulmonary disease and internal medicine at Duke University in Durham, North Carolina. By way of deposition, Dr. Williams testified that he diagnosed the plaintiff as having bronchitis and emphysema but not byssinosis. Dr. Williams' diagnosis was predicated in part on the fact that he had elicited no history of the "Monday Morning Syndrome" in his examination of plaintiff. Dr. Williams further premised his diagnosis on research which indicates that byssinosis occurs primarily in mill areas where cotton bract is more prevalent in the atmosphere. We note, however, that the doctor stated that more recent articles report the disease in weavers.
To this court, there is ample legal evidence to support the finding of the trial court that plaintiff has byssinosis. There was testimony, according to Dr. Goodman that plaintiff did in fact have byssinosis. In addition, the defendant's two expert witnesses admitted plaintiff could have byssinosis. Further, the plaintiff testified that he experienced extreme Monday morning discomfort and, as we noted above, this is the sole distinguishing factor that sets byssinosis apart from other similar diseases. *Page 1236 
Where, as here, in a workmen's compensation case, there is conflicting testimony, and some testimony supports the findings of the trial court, that finding is deemed conclusive. SouthernCotton Oil Co. v. Wynn, 266 Ala. 327, 96 So.2d 159 (1957);Loggins v. Mallory Capacitor Co., Ala.Civ.App., 344 So.2d 522
(1977).
The defendant next contends that plaintiff failed to meet his burden of proof inasmuch as there was no evidence that he was exposed to a byssinosis causing agent. The defendant maintains this is so because the proven cause of byssinosis is cotton dust which contains bract. Specifically, the defendant maintains that bract-free cotton dust does not cause byssinosis, and since the plaintiff failed to show that bract was continually present in the cotton dust in the weave room where he worked, the evidence fails to establish the disease was caused in a work-related environment. We disagree because our review of the record indicates there was conflicting evidence that plaintiff was exposed to a byssinosis causing agent at his place of employment.
Each of the parties presented evidence at trial as to the cause of byssinosis and the presence of the disease producing agent at the plaintiff's place of work.
Dr. Hatcher, a Ph.D. in environmental engineering and an associate professor at Clemson University in Clemson, South Carolina, has been studying byssinosis since 1971. In essence, Dr. Hatcher testified that based on his research, bract is the sole agent in cotton dust which causes byssinosis.
In addition, Dr. Hatcher testified that as an environmental engineer, he performed a variety of sophisticated chemical analyses of dust samples taken from the weave rooms of some fifty different mills and had never detected bract in these samples. We note, however, that he testified that he had not chemically analyzed the dust in the weave room in defendant's plant. Dr. Hatcher did testify, though that all cotton mills operate in a similar fashion and that he had inspected the Dan River mill and had found its operations to be standard.
With respect to the issue of causation, our review of the record indicates that both the plaintiff and defendant introduced evidence which indicates that bract is not the sole substance in cotton dust which causes byssinosis. Specifically, Dr. Goodman testified that there is insufficient evidence to identify the byssinosis causing agent in cotton dust, i.e., the state of the art is not such that experts agree on the cause of disease. In essence, Dr. Goodman testified that byssinosis is caused by the inhalation of cotton dust generally.
We further note that the defendant's evidence shows that whatever the cause, weavers as well as workers in other areas of cotton mills contract byssinosis at a significant rate. On this point, the defendant's witness, Dr. Williams, stated that recent research indicates that the incidence of the disease in weavers is much higher than previously suspected and that weavers in fact contract the disease. The research to which Dr. Williams referred was introduced in evidence and this document reports a significant incidence of the disease in the specific area of the mill in which plaintiff worked, i.e., the weave room.
In view of this conflicting evidence, it is clear to this court that the scientific community is not in harmony as to the cause of byssinosis. Put another way, there is sufficient scientific uncertainty to preclude this court from holding that bract, as a matter of law, is the sole agent which causes byssinosis.
We further note that plaintiff's proof established that he worked in the weave room at Dan River for thirty-eight years and was exposed to high levels of cotton dust throughout this period. There was evidence that the dust was constantly visible in the air. Furthermore, Dr. Hatcher testified that a portion of this dust is respirable. Finally, plaintiff was diagnosed as having byssinosis, and as we noted above, the disease is virtually unknown outside the textile industry.
Given this conflicting evidence the trial court was free to conclude, as it did, that *Page 1237 
plaintiff's byssinosis arose out of and in the course of his employment with the defendant. Where, as here, the trial court is reasonably satisfied from the evidence that the employee was exposed to a hazard peculiar to the industry, and that his disease resulted from that exposure, United States Steel Corp.v. Danner, 263 Ala. 310, 82 So.2d 404 (1955), it is not appropriate for this court to substitute its judgment for that of the trier of fact. Cochrum, supra; Conagra, supra.
To further substantiate what we have said, we note that cases of this nature must be interpreted in light of the fundamental beneficent policy of the Workmen's Compensation Act. Because of the act's remedial purposes, it should be liberally construed and all reasonable doubts resolved in favor of the employee.Gilmore v. Rust Engineering Co. 289 Ala. 46, 265 So.2d 591
(1972); Hamilton Motor v. Cooner, 254 Ala. 422, 47 So.2d 270
(1950); Young v. City of Huntsville, Ala.Civ.App.,342 So.2d 918 (1977).
For the foregoing reasons, we cannot say that the record is devoid of any legal evidence, or reasonable inferences therefrom, to support the trial court's findings. Accordingly, we find no error in the learned trial judge's conclusion that the plaintiff contracted byssinosis and that this disease arose out of and in the course of his employment.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.