ROBERT P. BRADLEY, Retired Appellate Judge.
This is a workmen’s compensation case.
Corbit Harvison was employed by International Paper Company on April 3,1987 as a temporary employee during a labor dispute. On May 10, 1987 Harvison was injured on the job when a roll of paper slammed into his left knee. Harvison was treated in the emergency room at Mobile Infirmary by Dr. Burt Taylor, who released Harvison to return to work the next day.
On May 18, 1987 Dr. Taylor performed arthroscopic surgery on Harvison’s left knee and removed a small loose fragment of bone. Dr. Taylor placed certain restrictions on Harvison’s physical activities; however, Harvison continued to work at International Paper. Harvison was assigned to a desk job for several months after he returned to work.
Harvison continued to work for International Paper until November 8, 1988, when the labor dispute was resolved and he was laid off.
During the time Harvison worked for International Paper, he received promotions and pay increases. At the time of his layoff, Harvison was receiving $18,305 per hour. His beginning pay rate at International Paper was $12.42 per hour.
Prior to being employed by International Paper, Harvison had worked for Presley Electric for $6.00 to $8.50 per hour.
The record reveals that Harvison’s last visit to Dr. Taylor was on October 25, 1988. Dr. Taylor stated that he had done all he could for Harvison at this time and considered Harvison to have a ten percent permanent impairment of his left knee. While under the primary care of Dr. Taylor, Harvison sought a second opinion from Dr. Preston Daugherty in August 1988. At that time, Dr. Daugherty considered Harvison to have reached maximum medical recovery and advised Harvison to return to work.
Harvison did not seek medical advice between October 25, 1988 and January 17, 1989. On January 17, 1989 Harvison again consulted Dr. Preston Daugherty. At the request of Dr. Daugherty, a magnetic resonance imaging procedure was performed on Harvison’s knee on January 23, 1989. That procedure revealed a loose body in the knee. On February 15, 1989 Dr. Daugherty performed an arthroscopy on Harvison’s knee and removed the loose body.
On March 30, 1989 Dr. Daugherty released Harvison from his care and stated that Harvison had a twenty percent permanent impairment to his left knee. International Paper paid temporary total benefits to Harvison from February 15, 1989 until March 30, 1989.
In his first issue, Harvison argues that the trial court erred by awarding him only a twenty percent permanent partial disability to his left leg. In support of this contention, Harvison says that the trial court should have considered his lost earning capacity in fixing the amount of his award of benefits. To justify this contention, he compares the $36,000 a year he was earning at International Paper to the $6,000 he is now earning part time in his disabled condition.
The most recent standard of review in workmen’s compensation cases handed, down by our supreme court is as follows:
*414 “Our review in workmen’s compensation cases is limited to a determination of whether there was any legal evidence to support the trial court’s findings of fact. If any reasonable view of the evidence supports the findings of the trial court, this Court may then determine whether the correct legal conclusions have been drawn therefrom. Ex parte Neal, 423 So.2d 850 (Ala.1982).”
Ex parte Patterson, 561 So.2d 236, 238 (Ala.1990).
In its judgment the trial court found that Harvison’s injury to his left leg did not extend to any other part of his body and that the benefits to be paid him were to be governed by § 25-5-57(a)(3), Code 1975.
Section 25-5-57(a) provides that when there is no loss of a leg, but only loss of the use of a leg, the amount to be paid is a proportionate part of the maximum of two hundred weeks corresponding to the extent of the partial loss of use of the leg. In the case at bar, Harvison’s compensation was based on forty weeks, which is twenty percent of two hundred weeks as provided in said Code section.
Harvison says, however, that the trial court should have considered his loss of earning capacity in awarding compensation benefits to him.
Where the evidence reveals a loss of use of a leg without accompanying disability to another part of the body, compensation is limited to the schedule in § 25-5-57(a)(3), Code 1975. Loggins v. Mallory Capacitor Co., 344 So.2d 522 (Ala.Civ.App.1977). Moreover, the schedule of benefits includes payment for loss of earning capacity or inability to secure employment. Loggins.
The trial court’s conclusion, that Harvi-son’s award of compensation benefits should be limited to those set out in § 25-5-57(a)(3), is supported by the facts and the law, and thus is not in error.
In his other issue Harvison contends that the trial court erred in refusing to award him temporary total benefits for the period between November 11, 1988 and February 14, 1989. November 11, 1988 is the date Harvison was terminated as a temporary employee at International Paper. February 14, 1989 is the date Harvi-son visited Dr. Daugherty for treatment of his left knee.
The trial court concluded that Harvison was not due temporary total benefits for the period in question.
This court has held that temporary total disability applies to the healing period during which the employee is recovering and is unable to perform his ordinary work duties, and the healing period ends when maximum recovery is reached. Defense Ordinance Corp. v. England, 52 Ala.App. 565, 295 So.2d 419 (Ala.Civ.App.1974). A temporary total disability may occur at different times during the recuperative period of healing, until maximum medical improvement is finally ascertained. Perkins v. G.C. Lingerie, Inc., 447 So.2d 796 (Ala.Civ. App.1984). There may be a material intervening period of nondisability which transpires between periods of temporary total disability. Perkins. The employee may not recover workmen’s compensation during this hiatus of nondisability. Perkins.
As of the period beginning on November 11, both of Harvison’s doctors considered him to have reached maximum medical recovery from his injury on May 10, 1987. No further surgery or treatment was planned. Harvison did not even consult a doctor again until his appointment with Dr. Daugherty on January 17, 1989. From the time Harvison first reached maximum recovery, the evidence shows no reoccurrence of temporary total disability until his surgery on February 15, 1989. The facts thus indicate that the period in question was a hiatus between periods of temporary total disability. Harvison is not entitled to recovery of benefits during this time.
Harvison argues that his injury made him unemployable during the period in question and thus caused a temporary total disability. This court has held that total disability means an inability to perform work of one’s trade or obtain reasonable, gainful employment. Carroll Construction Co. v. Hutcheson, 347 So.2d 527 (Ala. Civ.App.1977). However, the fact that a person is unemployed during a period does *415 not necessarily mean that he has such a disability. Defense Ordinance Corp.
A state vocational rehabilitation counsel- or, Maurice Bell, testified at trial that Har-vison’s injury disqualified him only from heavy or very heavy work. The record reveals that Harvison did in fact successfully perform lighter physical work for International Paper after the injury occurred. There is no evidence that Harvison’s injury prevented him from obtaining a similar type of employment following his termination at International Paper.
As noted above, the trial court found that Harvison was not entitled to additional temporary total benefits. The evidence shows that there was no temporary total disability during the period in question. The facts support the trial court’s finding and we are not permitted to change that decision. Patterson.
There being no reversible error apparent from the record, the judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge ROBERT P. BRADLEY while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.