794 So.2d 386 (2000)
Ex parte DAN RIVER, INC.
(In re Dan River, Inc. v. James V. Higgins).
1990894.
Supreme Court of Alabama.
July 14, 2000.
Opinion Overruling Rehearing November 22, 2000.
*387 John W. Clark, Jr., and Tommy C. Ritter, Jr., of Clark & Scott, P.C., Birmingham, for petitioner.
William P. Boggs and Amy J. Hayes of Boggs & Hayes, Clanton, for respondent.
HOUSTON, Justice.
On April 26, 1995, James Higgins sued for workers' compensation benefits, alleging that he had "become totally disabled as a result of occupational byssinosis, a disease of the lungs, caused by inhalation of minute particles of dust over a period of time and which ... dust is due to causes and conditions arising out of and in the course of plaintiff's employment [with Dan River, Inc., the defendant]." (Plaintiff's complaint, p. 2, R.7.) (Emphasis added.) Between 1954 and 1977, and on one occasion after 1977,[1] Higgins was exposed to cotton dust and fibers as part of his work environment at Dan River, and Higgins alleges that these materials, the dust and fibers, caused his byssinosis. Byssinosis was the only disease Higgins claimed to have contracted because of his work at Dan River.[2]
*388 Three doctors who had examined Higgins testified by deposition. Dr. Brian G. Forrester, a specialist in occupational and environmental medicine, testified as follows, in response to what the attorney for Dan River called "the ultimate question":
"Q. ... Do you have an opinion from having seen and examined Mr. Higgins as to whether he has byssinosis?
"A. Yes, I do.
"Q. What is your opinion?
"A. My opinion is he does not have byssinosis. He has none occupational [sic; nonoccupational?] form of adult asthma.
"Q. When you say a nonoccupational form of adult asthma, is that something that, in your judgment, is not related to the work which you understood him to have done?
"A. It is not caused by his work, yes."
Dr. Gaeton D. Lorino also testified that Higgins did not suffer from byssinosis:
"Q. Dr. Lorino, I'm just going to cut to the chase and ask you if you have an opinion, based on your examination, from your interviewing the patient, getting a patient history from him and your testing of him, as to whether or not Mr. Higgins has byssinosis. Do you have an opinion one way or another?
"A. Yes, I do have an opinion.
"Q. Dr. Lorino, can you state, to a reasonable degree of medical probability, what that opinion is?
"A. Yes. It's my opinion that this man does not have byssinosis."
The third doctor, Dr. Robert Fort Hambaugh, Jr., testified that he had been treating Higgins since 1992. Dr. Hambaugh attributed Higgins's breathing problem to his work conditions and exposures to the cotton dust and fibers at work. He treated Higgins for upper and lower respiratory illnesses that he said always followed the same pattern: chronic sinusitis with acute exacerbations, chronic bronchitis with acute exacerbations, always in close proximity to exposure to inhalants while working at Dan River. This same pattern repeated until Higgins retired from Dan River, he said, and the condition then began to improve. Dr. Hambaugh stated that textile fibers are known to cause very serious pulmonary diseases that are chronic, progressive, and even fatal. However, Dr. Hambaugh did not diagnose Higgins with byssinosis:
"Q. Did he have byssinosis?
"A. Byssinosis is, in fact, the pulmonary disorder that I'm talking about. I have never made the specific diagnosis of byssinosis in this person. I believe the only way you could do that would be to go into his chest and into his lungs and take a biopsy to see if the fibers of that kind were actually present. Up to now, I haven't been willing to do that."
(Emphasis added.)
Based upon these doctors' depositions and the testimony of the plaintiff, the trial judge entered this final judgment:
"This cause coming on before this Court upon the Complaint, Answer thereto, exhibits admitted and stipulations along with testimony taken before this Court on December 10, 1998 and upon consideration of all the evidence and testimony, this Court does make the following finding of fact and reaches these conclusions:
"1. The Defendant, Dan River, Inc., is an employer within the meaning of the [Workers'] Compensation Laws of the State of Alabama and was doing business in Elmore County, Alabama on January 29, 1994 and that this Court has jurisdiction of the cause of action of these parties.

*389 "2. The Plaintiff, James V. Higgins, on January 29, 1994 was an employee within the meaning of the [Workers'] Compensation Laws of the State of Alabama and was at that time covered by the Act.
"3. On January 29, 1994, the Plaintiff sustained an occupational disabling disease arising out of and in the course of his employment with the Defendant, Dan River, Inc., to wit: byssinosis.

"4. The Plaintiff has suffered an occupational disease as defined in Article 4, [§] 25-5-110 et seq. To wit: byssinosis, caused by a hazard peculiar to the textile industry.
"5. The Court further finds that the Plaintiff has suffered permanent, total disability under [§] 25-5-57[ (a) ], subparagraph (4). That the Plaintiff is 66 years old and he has been employed as a cotton mill worker for 40 years, that Plaintiff finished high school and it appears to this Court that he is not qualified by education, training or experience to do any ... work except that of a doffer in a cotton mill which required stamina and physical effort.
"6. The Court finds that the Plaintiff suffered a permanent, total disability to the extent of 100% of the body as a whole, and he is not able to earn wages as a result of this occupational disease, to wit: byssinosis.

"7. The Court finds that at the time the Plaintiff became totally disabled that he had an average weekly wage of $507.00 and is entitled to compensation at the rate of $338.43 per week for the remainder of his disability. The Court further finds that there has accumulated compensation benefits since January 29, 1994 through February 25, 1999, a total of 264 weeks at $338.43 per week or a total of $89,345.52 [sic].
"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by this Court that the Plaintiff have and recover of the Defendant, the lump sum of $89,345.52 for the 264 week accumulated compensation and that this sum be paid immediately, and that the Defendant pay to the Plaintiff, each week thereafter, commencing March 5, 1999, the sum of $338.43 for the duration of the Plaintiffs disability.
"IT IS FURTHER ORDERED that the Plaintiff's attorney, William P. Boggs of Boggs & Hayes, be paid as attorneys fees out of the lump sum payment, the sum of $13,401.81. It is further ORDERED that the Plaintiff's attorney, as attorneys fee, will receive (15%), Fifteen percent, of the weekly benefits that the Plaintiff will receive for the duration of his disability, said amount being $50.76 weekly.
"IT IS FURTHER ORDERED that the Defendant pay all future medical expense as provided for under the Workmen's Compensation Laws of the State of Alabama, [§] 25-5-77.
"IT IS FURTHER ORDERED that the cost incurred be paid by the Defendant.
"ORDERED this the 25th day of February, 1999."
(Emphasis added.) The basis for the finding is found in the paragraphs 3, 4, and 6 of the judgment (quoted above), which all refer specifically to byssinosis.
Dan River appealed to the Court of Civil Appeals, based upon the fact that not one of the three doctors diagnosed Higgins with byssinosis. The Court of Civil Appeals held, in a 3-2 decision (Robertson, P.J., and Yates and Monroe, JJ., concurring; Crawley and Thompson, JJ., dissenting):
"After reviewing the record, we cannot say that the trial court erred in *390 finding that Higgins suffered from byssinosis and is 100% totally disabled. The evidence indicated that Higgins's symptoms were consistent with a diagnosis of byssinosis and that his condition was caused by his regular exposure to cotton dust during his 40 years of employment with Dan River."
Dan River, Inc. v. Higgins, 794 So.2d 382 (Ala.Civ.App.1999). (Emphasis added.) We granted Dan River's petition for certiorari review.
Dan River contends, and we agree, that it was error for the trial court and the Court of Civil Appeals to diagnose Higgins as suffering from byssinosis. The record contains no testimony of a doctor willing to diagnosis Higgins with byssinosis. Even Higgins's own doctor, Dr. Hambaugh, testified, "I have never made the specific diagnosis of byssinosis in this person."
To prevail on this workers' compensation claim, Higgins must first prove that he is suffering from an occupational disease, specifically byssinosis. Alabama Code 1975 § 25-5-110, defines "occupational disease":
"(1) OCCUPATIONAL DISEASE. A disease arising out of and in the course of employment, including occupational pneumoconiosis and occupational exposure to radiation as defined in subdivisions (2) and (3), respectively, of this section, which is due to hazards in excess of those ordinarily incident to employment in general and is peculiar to the occupation in which the employee is engaged but without regard to negligence or fault, if any, of the employer. A disease, including, but not limited to, loss of hearing due to noise, shall be deemed an occupational disease only if caused by a hazard recognized as peculiar to a particular trade, process, occupation, or employment as a direct result of exposure, over a period of time, to the normal working conditions of the trade, process, occupation, or employment."
Higgins presented no testimony indicating that he has been diagnosed with byssinosis. Not a single medical expert diagnosed byssinosis; it was error for the trial court to make a diagnosis that the medical experts were not willing to make. We therefore reverse the judgment of the Court of Civil Appeals.
By this holding today we limit the holding in 3-M Co. v. Myers, 692 So.2d 134 (Ala.Civ.App.1997), which stated:
"In asserting that no second injury occurred, 3-M argues a lack of medical evidence showing a separate area of damage. However, 3-M does not address Myers's return to full duty work for three weeks after the first injury or her testimony and evidence as to the later injury and treatment. The law is well settled that the trial court has wide discretion in the review of evidence and is not bound by particular medical evidence.
"`The trial court is not bound by expert testimony, but, having observed the claimant and having heard his testimony, it is able to exercise its own judgment in reaching its conclusions. See Allen v. Diversified Products, 453 So.2d 1063 (Ala.Civ.App. 1984). Further, in arriving at its judgment, the trial court may consider all the evidence before it, as well as its own observations. The trial court may then interpret what it has heard and observed, according to its own best judgment. Armstrong v. Lewis & Associates Construction Co., 469 So.2d 605 (Ala.Civ.App.1984). Additionally, "the weight of the evidence... is not before this court on appeal in a workmen's compensation case." Bankhead Forest Industries, Inc. v. *391 Lovett, 423 So.2d 899, 900 (Ala.Civ. App.1982).'
"Schlumberger Indus. v. Moore, 656 So.2d 818, 821 (Ala.Civ.App.1994); see also Tarver v. Diamond Rubber Products Co., 664 So.2d 207 (Ala.Civ.App. 1994).
"Myers testified that the second injury occurred at a different location. The medical evidence shows that this second injury required a second surgical procedure to repair a tear in cartilage that was not present when the first injury was repaired. After reviewing the record, we conclude that the trial court's finding that Myers had sustained a second successive injury is supported by substantial evidence. Although other inferences could be drawn from all the evidence in this case, it is not the province of this Court to weigh the evidence. Bankhead Forest Industries, supra. Under [Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996) ], the trial court's finding that Myers suffered a second injury is therefore due to be affirmed."
692 So.2d at 137. The holding in 3-M has no application to this present case because the trial court in 3-M resolved conflicting testimony. We generally agree that a trial court can synthesize a wide range of medical testimony, even conflicting medical testimony, to reach its own conclusions on medical matters. However, trial courts cannot go so far as to find that a plaintiff has a particular disease without the testimony of at least one medical expert, qualified to make such a diagnosis, who is willing to testify that the plaintiff is actually suffering from that disease. Not one doctor diagnosed Higgins's problem as byssinosis. Therefore, it was error for the trial court to find that Higgins had that disease.
Our holding here is to be distinguished from the holding in Dan River Mills, Inc. v. Foshee, 365 So.2d 1232 (Ala.Civ.App. 1979). In that case, the Court of Civil Appeals, affirming a trial court's finding that a plaintiff was suffering from byssinosis after having worked for Dan River, wrote:
"The defendant first maintains that there was insufficient evidence presented at trial which establishes that plaintiff in fact has byssinosis. We do not agree inasmuch as our review of the record indicates there was conflicting testimony concerning the diagnosis of plaintiff's disease.
"The record reveals that three medical experts examined plaintiff and testified as to their findings. All three were specialists in internal medicine and lung diseases. Each of the three had extensive experience in the treatment of occupational respiratory diseases.
"Dr. Goodman, a practicing specialist in lung diseases and an associate professor in internal medicine at the University of Alabama in Birmingham, diagnosed plaintiff as having byssinosis. Dr. Goodman testified that byssinosis is caused by prolonged inhalation of ... cotton dust. At one point in the questioning, Dr. Goodman testified as follows:
"`Q. ... Doctor, with your examination and review of Mr. Foshee's history with inhalation of cotton dust over a period of years, which caused him to cough, wheeze, have tightness of the chest and loss in breathing capacity, is this one of the symptoms of byssinosis?
"`A. Yes, sir.
"`Q. Can you diagnosis Mr. Foshee's ailment at this time as byssinosis?
"`A. I have done so.'
"[And later he testified]:
"`Q. Doctor, with your findings of inhalation of cotton dust over a period *392 of years, with the coughing, the wheezing, the tightness of the chest, what is your ultimate diagnosis of Mr. Foshee?
"`A. That he has byssinosis.'
"Notwithstanding this testimony, the defendant introduced conflicting evidence by way of two expert witnesses
"Dr. Branscomb, head of the lung disease division of the University of Alabama Medical Center, testified that he diagnosed plaintiffs affliction as hypertension and bronchitis (possibly due to cigarette smoking), but not byssinosis. Dr. Branscomb stated that he had never heard of a case of byssinosis occurring in the weave room, that the bract and leaf material believed to cause byssinosis were in low concentration in that part of the mill, and the plaintiffs history of always having worked in that area was in no small measure responsible for the negative diagnosis. We note, however, that he could not be positive that plaintiff did not have byssinosis. At trial Dr. Branscomb stated:
"`Q. Yes, sir. There is no way medically ... that you can tell that this man does not have byssinosis, is it, Doctor Branscomb?
"`A. There's no way that one can positively say that this person has notyeh, I think that's right. I don't think you can positively say that he doesn't have byssinosis.'
"`Q. All right, sir.'
"Defendant's second expert witness, Dr. Williams, is an expert in pulmonary disease and internal medicine at Duke University in Durham, North Carolina. By way of deposition, Dr. Williams testified that he diagnosed the plaintiff as having bronchitis and emphysema but not byssinosis. Dr. Williams' diagnosis was predicated in part on the fact that he had elicited no history of the `Monday Morning Syndrome' in his examination of plaintiff. Dr. Williams further premised his diagnosis on research which indicates that byssinosis occurs primarily in mill areas where cotton bract is more prevalent in the atmosphere. We note, however, that the doctor stated that more recent articles report the disease in weavers.
"To this court, there is ample legal evidence to support the finding of the trial court that plaintiff has byssinosis. There was testimony, according to Dr. Goodman that plaintiff did in fact have byssinosis. In addition, the defendant's two expert witnesses admitted plaintiff could have byssinosis. Further, the plaintiff testified that he experienced extreme Monday morning discomfort and, as we noted above, this is the sole distinguishing factor that sets byssinosis apart from other similar diseases. Where, as here, in a workmen's compensation case, there is conflicting testimony, and some testimony supports the findings of the trial court, that finding is deemed conclusive. Southern Cotton Oil Co. v. Wynn, 266 Ala. 327, 96 So.2d 159 (1957); Loggins v. Mallory Capacitor Co., Ala. Civ.App., 344 So.2d 522 (1977)."
365 So.2d at 1234-36.
This present case is distinguishable from Foshee. In Foshee, the trial court heard conflicting testimony from medical experts as to whether the worker was suffering from byssinosis. However, the worker did present a medical doctor who testified that he had diagnosed the worker with byssinosis. If Higgins had presented such testimony in the present case, we would affirm; however, without a byssinosis diagnosis, there is no evidence, much less the "substantial evidence" required by Ala.Code 1975, § 25-5-81(e)(2), to support the trial *393 court's finding that Higgins suffered from byssinosis.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
COOK, J., concurs in the result.

On Application for Rehearing
HOUSTON, Justice.
APPLICATION OVERRULED.
HOOPER, C.J., and MADDOX, SEE, and BROWN, JJ., concur.
LYONS, JOHNSTONE, and ENGLAND, JJ., dissent.
JOHNSTONE, Justice (dissenting).
On original submission we reversed the decision of the Court of Civil Appeals affirming the judgment of the trial court awarding the plaintiff workers' compensation for byssinosis arising out of his employment with the defendant Dan River, Inc., where he had breathed textile fibers for about 23 years. Our rationale was that the plaintiff did not prove that his employment had caused his byssinosis inasmuch as he had not proved that he even had byssinosis. While I concurred on original submission, on application for rehearing, my review of Ex parte Price, 555 So.2d 1060 (Ala.1989), persuades me that the plaintiff did prove that he had contracted byssinosis and that his employment had caused his byssinosis. In Price, this Court stated:
"`To appraise the true degree of indispensability which should be accorded medical testimony, it is first necessary to dispel the misconception that valid awards can stand only if accompanied by a definite medical diagnosis. True, in many instances it may be impossible to form a judgment on the relation of the employment to the injury, or relation of the injury to the disability, without analyzing in medical terms what the injury or disease is. But this is not invariably so. In appropriate circumstances, awards may be made when medical evidence on these matters is inconclusive, indecisive, fragmentary, inconsistent, or even non-existent.'

"... Indeed, `[o]ur courts have explicitly stated that expert testimony is not prerequisite to a finding of a physical disability, its degree or duration.'"
555 So.2d at 1061-62 (quoting 3 A. Larson, The Law of Workmen's Compensation, § 79.51(a), at p. 15-426.128 (1988), and Fruehauf Corp. v. Prater, 360 So.2d 999, 1002 (Ala.Civ.App.1978)) (emphasis added). The trial court apparently based its judgment on the testimony of Dr. Robert Ford Hambaugh, Jr., who had treated the plaintiff for the last five or six years or so. Dr. Hambaugh testified in pertinent part:
"A. If, indeed, those were the conditions, then I would say that the likelihood of there being a cause-effect relationship is almost certain. It will never beno one could ever say that it is 100 percent certain. It is not as if a truck struck him on the highway and we can prove that there was bodily contact made in that particular way. But the evidence is so strong and so overwhelming and the medical literature is so supportive of situations like this associated with illness like his, that I would say based on that, if all of these conditions were present as you say they were and as he has told me that they were, then I would say that the cause and effect relationship is a virtual certainty in my opinion.

"MR. BOGGS: I don't have any further questions.
"EXAMINATION BY MR. CLARK:

*394 "Q. What was he exposed to there at Dan River that would have caused him to have any problems?
"A. I don't know what his actual exposure was. I know only what he told me his exposure was and that was to various kinds of fumes, meaning solvent fumes, smoke of one kind or another. And in particular, textile fibers. Textile fibers are known to cause very serious pulmonary diseases, which are chronic and progressive and even fatal.

"Q. Are there tests that can be run to determine whether or not this exposure to the textile fibers has caused such a condition?
"A. There would be no test that would be 100 percent reliable. The evidence for this would be the history of the person being in a particular place for a particular length of time for the exposure to have taken place. And based on what we know from animal models and other forms of experiments that have been done, that there is an association between that kind of exposure and chronic disease.
"Q. Did he have byssinosis?
"A. Byssinosis is, in fact, the pulmonary disorder that I'm talking about. I have never made the specific diagnosis of byssinosis in this person. I believe the only way you could do that would be to go into his chest and into his lung and take a biopsy to see if the fibers of that kind were actually present. Up to now, I haven't been willing to do that."
The emphasized language in Dr. Hambaugh's first and last answers quoted above supports the judgment of the trial court. In the context of the law as explained by Price, supra, Dr. Hambaugh's statement that he had never made the specific diagnosis of byssinosis in the plaintiff and his explanation that making such a diagnosis would require taking biopsies from the plaintiffs chest and lungsa procedure he had been unwilling to perform do not detract from the plaintiffs proof enough to invalidate the judgment of the trial court. Rather, Dr. Hambaugh's having "never made the specific diagnosis of byssinosis in" the plaintiff, in the context of Dr. Hambaugh's explanation, imply that he is a cautious, conservative person and a credible witness.
We are bound to accept the tendencies of the evidence most favorable to the winner of a judgment based on evidence ore tenus. See Cooper v. Peturis, 384 So.2d 1087 (Ala.1980). Moreover, such a judgment should not be reversed unless it is palpably wrong and manifestly unjust. Torsch v. McLeod, 665 So.2d 934 (Ala. 1995). The reason for these rules is that the fact-finder has observed the witnesses' demeanor and the inflections and emphases of the witnesses' delivery of their testimony. Justice v. Arab Lumber & Supply, Inc., 533 So.2d 538 (Ala.1988). These rules are reinforced by the rule that the beneficent purpose of the Workers' Compensation Act requires all reasonable doubts to be resolved in favor of the employee. Riley v. Perkins, 282 Ala. 629, 213 So.2d 796 (1968). Thus, I respectfully dissent from the reversal of the judgment of the trial court.
LYONS and ENGLAND, JJ., concur.
NOTES
[1] The particular date on which Higgins was last exposed to these materials, which he alleges were toxic, was not established in the record. Dan River contends that the statutory limitations period had expired before Higgins filed this action. However, the statute of limitations is an affirmative defense. Therefore, the burden was on Dan River to show that Higgins had not been exposed to the materials for more than two years before the filing of the complaint. "It is not necessary for the plaintiff to anticipate [the affirmative defense of the statute of limitations] and plead facts in avoidance thereof." Ellis v. Black Diamond Coal Mining Co., 265 Ala. 264, 267, 90 So.2d 770, 773 (1956).
[2] The evidence in the record indicates that Higgins may have suffered occupational diseases other than byssinosis. Because no claims related to diseases other than byssinosis are now before us, we express no opinion as to whether any such claims would be compensable under the Workers' Compensation Act or whether they would be barred by the statute of limitations; nor will we otherwise discuss any such claims.