THOMPSON, Judge.
Lowell Harris sued his employer, Drum-mond Company, Inc. (“Drummond”), on July 16, 1997, seeking to recover workers’ compensation benefits for an alleged occupational disease, namely pneumoconiosis. On July 28, 1997, Drummond answered Harris’s complaint and denied liability. Following an ore tenus proceeding, the trial court entered an order on November 1, 2000, finding, among other things, that Harris suffered from pneumoconiosis that arose out of and in the course of employment with Drummond; that Drummond had proper notice of this disease; and that Harris was 100% permanently and totally disabled. The court awarded benefits accordingly. Drummond filed a post-judgment motion, but the trial court denied Drummond’s postjudgment motion on February 8, 2001. Drummond appealed.
This case is governed by the Alabama Workers’ Compensation Act, which provides that “[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” Ala.Code 1975, § 25-5-81(e) (2). In interpreting the term “substantial evidence,” the Supreme Court of Alabama has stated:
“[Ujnder the applicable standard of review, we will not reverse the trial court’s finding of fact if that finding is supported by substantial evidence — if that finding is supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
Ex parte Trinity Indus., Inc., 680 So.2d 262, 268-69 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
The record indicates that Harris worked for Drummond from 1974 until 1996. Harris worked as a “drill helper,” drilling through rock. Harris’s family physician, Dr. Jerry W. Mosely, referred Harris to Dr. Terry Bentley, a psychiatrist, and he was treated for depression on February 27, 1995. Dr. Bentley diagnosed Harris as unable to work because of severe depression; he encouraged him to retire. Harris retired in 1996 because of his severe depression.
Harris complained to Dr. Mosely of breathing irregularities. Apparently because of the nature of Harris’s employment, Dr. Mosely suspected that his breathing problems might be pneumoconi-osis. Harris then sought treatment from two pulmonary specialists, Dr. Allan R. Goldstein and Dr. Jan H. Westerman. Dr. Goldstein was the first of the two doctors to examine Harris, and he concluded that Harris’s condition was not consistent with pneumoconiosis. Dr. Goldstein concluded that Harris’s chest X-rays were completely normal and clear.
*777 In 1999, when Harris continued to complain of breathing difficulties, Dr. Mosely referred Harris to Dr. Westerman. Dr. Westerman examined Harris and concluded that, while it was possible that Harris suffered from pneumoconiosis, no signs of the irregularities that would indicate pneu-moconiosis were present. Dr. Westerman testified that assuming Harris was suffering from pneumoconiosis, it was doubtful that the condition would cause him any difficulties in the future. Harris sought treatment for his alleged pneumoconiosis from only Dr. Goldstein and Dr. Wester-man, and neither doctor diagnosed him as having pneumoconiosis.
In Ex parte Dan River, Inc., 794 So.2d 386 (Ala.2000), the employee, Higgins, sued his employer, seeking workers’ compensation benefits; he alleged that he suffered from occupational byssinosis, a lung disease caused by long-term exposure to cotton dust. Although he was exposed to cotton dust for 25 of the 40 years he worked for Dan River, Higgins was unable to produce a physician who would testify that he suffered from byssinosis. One doctor testified that Higgins’s respiratory problem was work related, but that doctor “never made the specific diagnosis of bys-sinosis.” Ex parte Dan River, 794 So.2d at 388. Two other physicians affirmatively stated that Higgins did not suffer from byssinosis. Thus, none of the three medical experts who examined Higgins and testified at the trial affirmatively diagnosed him as having byssinosis. The trial court found that the worker suffered from byssi-nosis and that he was permanently and totally disabled. This court affirmed. Dan River, Inc. v. Higgins, 794 So.2d 382 (Ala.Civ.App.1999). (Per Yates, J., with Robertson, P.J., and Monroe J., concurring and Crawley and Thompson JJ., dissenting.)
Our supreme court reversed, holding that a trial court may reach its own conclusions in resolving conflicting testimony, but that it “cannot go so far as to find that a plaintiff has a particular disease without the testimony of at least one medical expert, qualified to make such a diagnosis, who is willing to testify that the plaintiff is actually suffering from that disease.” Ex parte Dan River, 794 So.2d at 391. The court in Ex parte Dan River, supra, concluded that “it was error for the trial court to make a diagnosis that the medical experts were not willing to make.” 794 So.2d at 390.
The court distinguished the holding in 3-M Co. v. Myers, 692 So.2d 134 (Ala.Civ.App.1997). In 3-M, the court held that the trial court is not bound to follow medical testimony in reaching a conclusion in pases where the medical testimony is in conflict. The court in 3-M received conflicting testimony from medical experts that needed to be analyzed. In Ex parte Dan River, there was no conflict in the testimony. Although the court in Ex parte Dan River reaffirmed that a trial court has wide discretion in the review of evidence and that it can synthesize a wide range of medical testimony, the court in Ex parte Dan River found that, although vested with discretion, trial courts may not find that a plaintiff has a disease without an expert’s testifying that the plaintiff actually suffers from that disease. Ex parte Dan River, 794 So.2d at 390 (Ala.2000).
The record contains no evidence indicating that a medical doctor has diagnpsed Harris as having pneumoconiosis. Dr. Goldstein stated that Harris did not suffer from pneumoconiosis. Dr. Westerman stated that Harris’s complaints were only “possibly consistent with coal worker’s pneumoconiosis.” Dr. Westerman also stated that Harris’s chest X-rays were not consistent with pneumoconiosis and that his lungs were clear and had excellent airflow. Dr. Westerman concluded that Harris suffered from a respiratory-tract infection.
*778 In this case, as in Ex parte Dan River, supra, no doctor has diagnosed the plaintiff as suffering from the occupational disease for which he sought workers’ compensation benefits. The trial court is vested with discretion over this case, but not to the extent of making a diagnosis that medical experts were unwilling to make. Ex parte Dan River, supra. We are unable to conclude that the trial court’s judgment finding that Harris suffers from pneumo-coniosis is supported by substantial evidence. See West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). The other issues raised in Drummond’s brief on appeal relate to the trial court’s determination that Harris was permanently and totally disabled due to the pneumoconiosis. Because we are reversing the trial court’s judgment insofar as it found that Harris suffered from job-related pneumoconiosis, we need not reach those issues.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, PITTMAN, and MURDOCK, JJ., concur.