The Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975, defines "occupational pneumoconiosis" as
 "[a] disease of the lungs caused by inhalation of minute particles of dust over a period of time, which dust is due to causes and conditions arising out of and in the course of the employment, without regard to whether the causes or conditions are inherent in the employment or can be eliminated or reduced by due care on the part of the employer. The term `occupational pneumoconiosis' shall include, but without limitation, such diseases as silicosis, siderosis, anthracosis, anthrasilicosis, anthracosilicosis, anthraco-tuberculosis, tuberculosilicosis, silicotuberculosis, aluminosis, and other diseases of the lungs resulting from causes enumerated in this section."
Ala. Code 1975, § 25-5-110(2) (emphasis added). Thus, while the main opinion is correct that the term "occupational pneumoconiosis" is not a term that is limited to one particulardisease, it is a term that does refer to particular diseases, namely, diseases of the lung that have a specific *Page 829 
etiology involving the "inhalation of minute particles of dust over a period of time." Because of the need for medical expertise to diagnose whether an employee suffers from a disease of the lungs with this particular etiology,[1] a case involving the question whether an employee suffers from occupational pneumoconiosis is no less subject to the principles of law articulated in Ex parte Dan River, Inc., 794 So.2d 386 (Ala. 2000), and Drummond Co. v. Harris, 824 So.2d 775 (Ala.Civ.App. 2001), than were those cases. Indeed, the issue in Harris was whether the employee suffered from occupational pneumoconiosis, and the same definition of "occupational pneumoconiosis" that is at issue in the present case was in place when this court decidedHarris. We were correct to apply the principle of law articulated in Ex parte Dan River in the Harris case given the nature of the diseases that, definitionally, fall within the term "occupational pneumoconiosis" and the nature of the etiology prescribed by the statute.
The reason that the outcome for the employee is different in the present case than it was for the employees in Ex parte DanRiver and Harris, therefore, is not that the present case is not subject to the same principle that governed the outcome in those cases. Instead, it is that, in applying that principle to the present case, one finds that, unlike the records in Ex parteDan River, Inc. and Harris, the record in the present casedoes contain sufficient medical testimony supporting the trial court's conclusion that the worker suffered from occupational pneumoconiosis. Specifically, the record here contains substantial evidence in the form of the testimony of Dr. Westerman that the worker's condition resulted from, or was at least aggravated by, the inhalation over time of dust particles in his work, thus satisfying the definitional requirements of §25-5-110(2).
[1] This case illustrates the need for such medical expertise. While each of the five physicians who testified in this case agreed that the employee suffered from some illness in his lungs, some of the physicians involved stopped short of attributing that illness to the inhalation of minute dust particles, and some of the medical testimony tended to support the conclusion that the employee's illness had its etiology in exposure to chemicals or other workplace substances other than particles of dust.
Further, it is not enough that the record would support the conclusion that the worker suffered from some
occupation-induced or occupation-aggravated illness. Consistent with Ex parte Dan River, Inc., 794 So.2d 386, and Drummond Co.v. Harris, 824 So.2d 775, it is necessary to determine whether the record supports the conclusion that the employee suffered from occupational pneumoconiosis, specifically, rather than some other illness, because the trial court specifically found the employee to suffer from occupational pneumoconiosis. This court is not a finder of fact and cannot make a finding that the employee suffered from some affliction different from that which the trial court found him to suffer. Nor can we speculate as to what percentage of disability, if any, the trial court would have assigned if it had found that the employee suffered from some different affliction.